HYLE, Appellee,

v.

PORTER, Appellant.

[Cite as *Hyle v. Porter*, 170 Ohio App.3d 710, 2006-Ohio-5454.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050768.

Decided Oct. 20, 2006.

Joseph T. Deters, Hamilton County Prosecuting Attorney, Bernard A. Bouchard, and Francis M. Hyle, Green Township Law Director, for appellee.

Ohio Justice & Policy Center and David A. Singleton, for appellant.

---

MARK P. PAINTER, Judge.

{¶ 1} In this case, we address whether R.C. 2950.031—Ohio's residency-restriction statute prohibiting certain sexually oriented offenders from living within 1,000 feet of a school—can be applied to an offender who had bought his home and committed his offense before July 31, 2003 (the statute's effective date). It can.

{¶ 2} Defendant-appellant, Gerry R. Porter Jr., is a convicted sex offender who had lived within 1,000 feet of a school until he was forced to leave his home by the Hamilton County Common Pleas Court. The trial court found that Porter was in violation of the 1,000-foot rule in R.C. 2950.031. The injunction ordering his ejection was issued at the behest of plaintiff-appellee, Francis M. Hyle, the law director of Green Township, and the Hamilton County Prosecutor. Porter assigns error to the trial court's finding that the rule is constitutional, as well as the trial court's decision denying his dismissal motion at the close of Hyle's case. We affirm the trial court's judgment.

{¶ 3} Porter bought his home in Cheviot in about 1991. He had lived in the home with his wife and his two sons, until he was forced to move in 2005. The following facts sequentially chronicle the events leading up to his ejection.

{¶ 4} In 1995, Porter was convicted of misdemeanor sexual imposition.

{¶ 5} In 1997, the Ohio legislature amended the sexual-predator statute to impose registration, classification, and community-notification requirements on certain sexually oriented offenders.[1]

{¶ 6} In 1999, Porter was convicted of sexual battery, placed on five years' probation, and ordered to register as a sexually oriented offender under the amended 1997 sexual-predator statute.[2]

{¶ 7} In 2003, the Ohio legislature enacted the 1,000–foot rule. The rule forbids registered sex offenders to establish "a residence or occupy residential premises within one thousand feet of any school premises."[3] Under the rule, injunctive relief may be sought against registered sex offenders living within 1,000 feet of a school. Because Porter's 1999 conviction required that he register as a sex offender, Porter fit squarely within the rule's reach.

{¶ 8} In the summer of 2005, Hyle had discovered that Porter's home of 14 years was within 983 feet of St. Jude Elementary School. Hyle then sued under the rule, requesting that the court enjoin Porter from remaining in his home.

{¶ 9} St. Jude is not visible from Porter's property. And it is impossible to walk to the school in a straight line without averting obstacles, hurdling hedges, traversing trellises, or otherwise encroaching on neighbors' property. Despite the fact that the meandering path to St. Jude would have required that Porter travel "over the river and through the woods," the legislature and the court below decided that the 1,000 feet is measured as the crow flies. Although Porter is not a crow and cannot fly, the trial court found that Porter was a registered sex offender whose back yard was within the 1,000–foot radius extending from St. Jude. So Porter was evicted.

{¶ 10} Porter's first assignment of error attacks the constitutionality of the rule on three grounds: (1) that the rule violates the Ex Post Facto Clause, (2) that the rule facially violates the Due Process Clause, and (3) that if the rule was intended to be applied retroactively, then it violates Ohio's constitutional prohibition against retroactive laws. We hold that the rule does not impinge on the constitutional prohibition against ex post facto laws, that Porter's due-process claim is not ripe, and that although the Ohio legislature intended the rule to be applied retroactively, it does not violate the Ohio Constitution's prohibition against retroactive laws. Thus, Porter's constitutional arguments are not well taken.

---

1. See R.C. Chapter 2950.

2. R.C. 2950.04.

3. R.C. 2950.031(A).

■■■■■■■■■■■■■■■■■■■

### I. The Constitutionality of the 1,000–Foot Rule

{¶ 11} We first address whether the 1,000–foot rule violates the Ex Post Facto Clause. Porter argues that the rule is an ex post facto punishment because it retroactively punishes sex offenders who had committed an offense before July 31, 2003, the effective date of the rule. The United States Constitution prohibits states from passing ex post facto laws.[4] The literal definition of "ex post facto" is "after the fact; by an act or fact occurring after some previous act or fact, and relating thereto."[5]

■■■■ {¶ 12} The parties agree that the rule is civil, not criminal. We therefore must decide whether the law is so "punitive either in purpose or in effect as to negate the State's intention to deem it civil."[6] In so determining, we consider whether the sanction (1) involves an affirmative disability or restraint, (2) has historically been regarded as a punishment, (3) will promote the traditional aims of punishment, (4) has a rational connection to a nonpunitive purpose, and (5) appears excessive for that purpose.[7] These considerations are neither exhaustive nor dispositive. We note that "only the clearest of proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."[8]

■■■■ {¶ 13} We first consider whether the sanction involves an affirmative disability or restraint. Although the rule affirmatively restrains or disables in the sense that convicted sex offenders may not *live* within 1,000 feet of a school, we cannot say that this restriction rises to the level of restraint that constitutes punishment.[9] We note that the rule does not physically restrain or otherwise impede sexually oriented offenders from (1) traveling through school zones, (2) entering these areas for employment, or (3) conducting commercial transactions within the zone.[10] Moreover, the rule does not prohibit an offender from *owning, renting, or leasing* a home within 1,000 feet of a school. Sexually oriented offenders are simply prohibited from *living* within 1,000 feet of a school. The

---

4. Section 10, Article I, United States Constitution.

5. *State v. Cook* (1998), 83 Ohio St.3d 404, 414, 700 N.E.2d 570.

6. *Smith v. Doe* (2003), 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164.

7. See id. at 97, 123 S.Ct. 1140, 155 L.Ed.2d 164; see, also, *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644.

8. See id. at 92, 123 S.Ct. 1140, 155 L.Ed.2d 164.

9. See, e.g., *Coston v. Petro* (S.D.Ohio 2005), 398 F.Supp.2d 878, 885–886.

10. See id. at 885.

restriction does not affirmatively disable or restrain offenders so severely as to be penal.

{¶ 14} We next answer whether the rule has historically been regarded as a punishment. As we have noted, the rule was passed in 2003—it obviously is not an historical method of punishment in the literal sense.

{¶ 15} Porter likens the rule's 1,000–foot prohibition to probation and parole supervision. Probation and parole supervision has historically been regarded as a form of punishment. A convict placed on probation or parole is subjected to intense monitoring at the hands of a parole officer. The officer closely supervises the convict, regulates where the convict may reside, and often requires the convict to complete drug tests and to refrain from further breaking the law. Compliance is mandatory, and noncompliance can result in the revocation of probation, criminal sanctions, and punitive restraints. In contrast, the rule imposes no supervisory officer on the offender. Nor does the rule explicate where sexually oriented offenders may reside. Rather, it states where they may not reside—within 1,000 feet of a school. Violators of the rule are subject to a possible injunction. An injunction has historically been a civil, as opposed to a penal, remedy. And the injunction may be granted only after an injunctive-relief hearing that allows a court to balance the equities. In the same vein, rule violators cannot be jailed for an infraction; they can simply be ordered to move. Porter's analogy is not well taken. The restriction imposed by the rule is but a tenuous thread in comparison to the chains of probation and parole.

{¶ 16} We now discuss whether the rule's operation promotes the traditional aims of punishment. The twin aims of punishment are deterrence and retribution.[11] In distinguishing deterrence and retribution from a remedial measure, the Ohio Supreme Court has declared, "Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing justice. Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior. Remedial measures, on the other hand, seek to solve a problem, for instance by removing the likely perpetrators of future corruption * * *."[12]

{¶ 17} We hold that the rule does not promote deterrence or retribution. The Eighth Circuit, while interpreting a similar 2,000–foot restriction, stated that the primary purpose of such a law is not to "alter the offender's incentive structure by demonstrating the negative consequences that will flow from committing a sex

---

11. See *Smith v. Doe,* supra, 538 U.S. at 102, 123 S.Ct. 1140, 155 L.Ed.2d 164.

12. *State v. Cook,* supra, 83 Ohio St.3d at 420, 700 N.E.2d 570, citing *Artway v. New Jersey Attorney Gen.* (C.A.3, 1996), 81 F.3d 1235, 1255.

offense."[13] Rather, the rule is remedial in nature and is designed to reduce the likelihood of reoffense by limiting the offender's temptation and reducing the opportunity to commit a new crime.[14] It does not seek to realize "justice." Further, statutes with a lesser disciplinary effect than incarceration have little deterrent effect.[15] We conclude that the rule does not operate to promote deterrence or retribution.

{¶ 18} We now must examine whether the rule has a rational connection to a nonpunitive purpose. The rational-connection requirement is not a demanding one. The rule is not punitive simply because it does not fit perfectly, or even closely, with the nonpunitive aims it seeks to advance.[16] The legislature has determined that convicted sex offenders are likely to reoffend.[17] In light of that legislative determination, we conclude that even if the rule's effect is minimally retributive, it is nonetheless reasonably related to the dangers posed by recidivists in a way that is consistent with the regulatory scheme of protecting the safety and general welfare of Ohio's citizenry.[18] The legislature's decision to prohibit sex offenders from living within 1,000 feet of a school is closely connected to the nonpunitive purpose of protecting children. The legislature, in enacting the rule, has chosen a reasonable method to prevent recidivism and to protect a particularly vulnerable population from convicted sex offenders. We therefore conclude that the rule is rationally connected to its nonpunitive purpose.

{¶ 19} Finally, we decide whether the rule is excessive with respect to its nonpunitive purpose of protecting children. In making this determination, we do not decide whether the legislature made the best choice possible to address the problem it sought to remedy.[19] Rather, we decide whether the rule is reasonable with respect to its nonpunitive objective.[20] Porter argues that the statute is excessive because it applies to all sex offenders instead of just those who have previously committed a sex offense against children. But this position is not consistent with the United States Supreme Court's "direction that the 'excessive-

13. *Doe v. Miller* (C.A.8, 2005), 405 F.3d 700, 720.

14. See id.

15. See, e.g., *State v. Cook,* supra Note 12.

16. See *Smith v. Doe,* supra, 538 U.S. at 103, 123 S.Ct. 1140, 155 L.Ed.2d 164.

17. See R.C. 2950.02(A)(2).

18. See, e.g., *Smith v. Doe,* supra, 538 U.S. at 102, 123 S.Ct. 1140, 155 L.Ed.2d 164.

19. Id. at 105, 123 S.Ct. 1140, 155 L.Ed.2d 164.

20. Id.

ness' prong of the ex post facto analysis does not require a 'close or perfect fit' between the legislature's nonpunitive purpose and the corresponding legislation."[21] Historically the Supreme Court has held that restrictions on various classes of offenders are nonpunitive (despite the absence of particularized determinations), including laws prohibiting the practice of medicine by convicted felons,[22] laws prohibiting convicted felons from serving as officers or agents of a union,[23] and laws requiring sex offenders to register.[24] We conclude that the rule banning registered sex offenders from living within 1,000 feet of a school is closely aligned with the legislature's regulatory purpose and is not "excessive" within the meaning of the Supreme Court's decisions.[25]

{¶ 20} We hold that the rule is not so penal in effect as to eviscerate the legislature's nonpunitive purpose and that it therefore does not violate the constitutional prohibition against ex post facto laws. This holding is in accordance with other state,[26] federal,[27] and Ohio appellate courts.[28]

{¶ 21} Porter's second constitutional attack argues that the rule facially violates the Due Process Clause because it fails to give fair notice of where a registered sex offender can live without being continually at risk of being ejected. Porter's argument is that schools may "move to the nuisance" (although the "nuisance" in this instance would be a registered sex offender) and force an established offender to move. Porter's second assignment proposing his "move-to-the-offender" argument is not ripe for adjudication. The ripeness doctrine generally prevents "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[29] The basic premise of the doctrine is that the judicial process should be reserved for problems that are real

---

21. *Doe v. Miller,* supra, 405 F.3d at 722, quoting *Smith v. Doe,* supra, 538 U.S. at 102, 123 S.Ct. 1140, 155 L.Ed.2d 164.

22. Id., citing *Hawker v. New York* (1898), 170 U.S. 189, 197, 18 S.Ct. 573, 42 L.Ed. 1002.

23. Id., citing *De Veau v. Braisted* (1960), 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (plurality opinion); id. at 160–161, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (opinion by Brennan, J.).

24. Id., citing *Smith v. Doe,* supra, 538 U.S. at 106, 123 S.Ct. 1140, 155 L.Ed.2d 164.

25. See, e.g., id.; see, also, *State v. Cook,* supra, note 12.

26. E.g., *State v. Seering* (Iowa 2005), 701 N.W.2d 655; *State v. Leroy* (2005), 357 Ill.App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769; *Lee v. State* (Ala.Crim.App.2004), 895 So.2d 1038.

27. E.g., *Smith v. Doe,* supra note 6; *Doe v. Miller,* supra note 13; *Coston v. Petro,* supra note 9; see, generally, *Doe v. Parish* (Sept. 14, 2006), N.D.Okla. No. 06–CV–0457–CVE–FHM.

28. See, e.g., *State v. Cupp,* 2d Dist. Nos. 21176 and 21348, 2006-Ohio-1808, 2006 WL 925174.

29. See *Abbott Labs. v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

or present and imminent, not squandered on problems that are abstract, hypo-
thetical, or remote.[30] Porter's second assignment of error would be more
appropriately raised at an injunction hearing after the speculative facts of which
he now complains have come to fruition. But St. Jude School was there before
Porter moved in; accordingly, Porter's second constitutional challenge is over-
ruled.

▇▇▇ {¶ 22} Porter's final constitutional criticism is that if the rule was intended
to be applied retroactively, then it violates Ohio's constitutional prohibition
against retroactive laws. At trial Porter failed to raise the question whether the
rule, as it applies to him, is unconstitutionally retroactive. Often, appellate courts
will not address new legal arguments that were not raised at trial.[31] Whether the
rule is unconstitutionally retroactive is an issue that should have been raised at
the trial level. But appellate courts have discretion to review a claimed denial of
constitutional rights not raised below.[32] Though this issue was not argued below,
we believe the constitutional rights and interests involved warrant appellate
review.

▇▇▇ {¶ 23} In deciding whether a statute is unconstitutionally retroactive, a
court must determine whether the legislature actually intended the statute to be
applied retroactively, and if so, then, and only then, the court must decide
whether the statute is substantive or remedial.[33] Although the legislature has
failed to expressly make the rule retroactive, there is enough evidence to
conclude that the legislature intended the rule to apply to sexually oriented
offenders convicted on or after July 1, 1997. Said otherwise, offenders who have
been released from imprisonment for their sexually oriented offenses prior to
July 1, 1997, are exempt from registration and are likewise exempt from the
residency requirements imposed by the rule.[34] In our view, the threshold
requirement for the rule's retroactive application is an offender's registration
under the 1997 amendment. As we have already noted, Porter was convicted of a
second sexually oriented offense in 1999, requiring him to register as a sexually
oriented offender. So Porter's 1999 sexually oriented offender classification

---

30. *State ex rel. Elyria Foundry Co. v. Indus. Comm.* (1998), 82 Ohio St.3d 88, 89, 694 N.E.2d 459.

31. See, e.g., *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.

32. *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, paragraph one of the syllabus.

33. See *State v. Cook,* supra note 9, 83 Ohio St.3d at 410, 700 N.E.2d 570.

34. See *Coston v. Petro,* supra, 398 F.Supp.2d at 887.

triggered the retroactive application of the rule, and he was subject to its constraints.

{¶ 24} We now consider whether the statute is substantive or remedial. Porter argues that the rule's retroactive application would divest him of substantive property rights. He argues that the rule deprives him of his right to remain in his home. Porter likens this divestiture to a government appropriation. In attempting to buttress his argument, Porter cites the recent Ohio Supreme Court opinion in *Norwood v. Horney*.[35] In *Norwood*, the court, in dicta, stated, "For the individual property owner, the appropriation is not simply the seizure of a house. It is the taking of a home—the place where ancestors toiled, where families were raised, where memories were made."[36] After a thorough reading of the *Norwood* opinion, Porter's misunderstanding is understandable. But the *Norwood* case tells us that the rights related to property include the rights to acquire, use, enjoy, and dispose of property.[37] This case does not concern a total divestiture of Porter's property rights. As we have already said, the rule prohibits an offender from *residing* within 1,000 feet of a school. But it does not prohibit an offender from *owning, renting, or leasing* property within the 1,000–foot zone. Thus the rule is remedial and does not offend Ohio's constitutional prohibition against retroactive laws. The rule survives Porter's three-pronged constitutional attack.

{¶ 25} Porter's second assignment of error charges the trial court with error in denying his dismissal motion at the close of Hyle's case-in-chief. This assignment is meritless. Porter argues that Hyle's case-in-chief failed to prove that St. Jude School and St. Jude Church are on the same parcel that was used to measure the 1,000–foot radius. But Hyle's case-in-chief presented testimony that St. Jude Elementary is at 5940 Bridgetown Road, and that the parcel of land on which the school, the rectory, and the church are located is owned by the Archdiocese of Cincinnati and St. Jude Parish. We conclude that Hyle proved the location of the St. Jude parcel in his case-in-chief. That parcel was found to be within 1,000 feet of Porter's home. Porter's second assignment of error is overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

HILDEBRANDT, P.J., and HENDON, J., concur.

---

35. 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115.

36. Id. at ¶ 4.

37. Id. at ¶ 34, citing *Buchanan v. Warley* (1917), 245 U.S. 60, 74, 38 S.Ct. 16, 62 L.Ed. 149.