DECISION. *Page 2 
{¶ 1} Defendant-appellant Levi Walker was convicted of three counts of rape following a jury trial. Each count of rape involved a different type of sexual act committed against his minor stepdaughter, N.Y. Walker was classified as a sexually oriented offender and sentenced to 24 years' imprisonment.
 {¶ 2} Walker now appeals. He argues in seven assignments of error (1) that he was deprived of his rights to a public trial and a trial by jury when the trial court failed to disclose a portion of a communication received from the jury; (2) that the trial court erred in not conducting a voir dire of the entire jury panel and declaring a mistrial after a juror had made contact with a witness for the prosecution; (3) that the trial court admitted hearsay testimony in violation of Walker's rights; (4) that he was deprived of a fair trial due to prosecutorial misconduct during closing argument; (5) that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence; (6) that the trial court's order that he not reside within 1000 feet of a school violated his rights of due process, freedom of movement, and freedom of travel; and (7) that the trial court erred in the imposition of sentence.
 {¶ 3} For the following reasons, the judgment of the trial court is affirmed.
 Factual Background {¶ 4} Walker had repeatedly sexually abused his stepdaughter N.Y. over a two-year period when N.Y. was approximately 10 to 12 years old. *Page 3 
 {¶ 5} Christy Walker,[1] N.Y.'s mother, discovered the abuse on February 1, 2006. Christy had been walking upstairs and had seen Walker's shadow on the wall as he left N.Y.'s room. Christy encountered Walker on the stairs, and although Walker did not physically stop her, she felt that he was trying to prevent her from continuing upstairs. N.Y. was hiding underneath her bed when Christy entered her bedroom. Christy was able to coax N.Y. out from underneath the bed and noticed that N.Y. had a throw rug wrapped around her waist and that N.Y.'s pants and underwear were underneath the bed. N.Y. initially told Christy that Walker had walked in on her while she was changing. But after Walker had left the bedroom, N.Y. told Christy that Walker had been abusing her.
 {¶ 6} N.Y. testified that, on February 1, 2006, Walker had entered her bedroom and had asked her to pull down her pants and underwear. He told her that he had had a bad day and that he wanted to "hump" her, which, according to N.Y., meant that he wanted to put his penis on her butt. Walker instructed N.Y. to lie on her bed and bend over. Walker had pulled down his own pants and underwear and had put his penis on her anus. But upon hearing Christy's footsteps on the stairs, Walker had pulled up his pants and run out of the room.
 {¶ 7} N.Y. testified that Walker had done this to her before, beginning when she was approximately ten years old. According to N.Y., Walker usually abused her in the mornings, after her mother had left for work but before she left for school. N.Y. testified that Walker had made her suck his penis, and that he had sucked on her breasts and licked her vagina. Walker had also put his penis halfway into both her vagina and her anus, but had removed it when N.Y. told him that it was painful. *Page 4 
She explained that these incidents of abuse had taken place in December of 2005 and January of 2006, and she stated during which month the different types of abuse had occurred. N.Y. further testified that Walker had used something from what she described as a "Neosporin bottle" that made his penis slide better. N.Y. identified this item at trial as KY jelly.
 {¶ 8} N.Y. stated that Walker had told her to lie to her mother about the abuse. If she did not do what Walker told her, he would ground her or take away her personal items.
 {¶ 9} Walker testified on his own behalf and denied abusing N.Y. According to Walker, on February 1, 2006, he had walked in on N.Y. while she had been changing her clothes. Walker testified that he had been stunned when Christy confronted him with N.Y.'s allegations. Walker further stated that, as N.Y.'s parent, he had been involved in punishing her when necessary.
 {¶ 10} The jury heard testimony from Dr. Robert Shapiro, who was employed at the Children's Hospital Mayerson Center for safe and healthy children. Dr. Shapiro had examined N.Y. on February 2, 2006. He testified that N.Y.'s exam results were normal, but that such a result was not unusual for victims of sexual abuse. Dr. Shapiro further stated that N.Y. had been able to provide a large amount of detail concerning the abuse, and that he believed that she had been a victim of sexual abuse. Sharon Dickman, a sexual-assault nurse examiner at Children's Hospital, also examined N.Y. Dickman observed no sign of injury to N.Y., but testified that it was common for victims of N.Y.'s age not to have visible injuries. *Page 5 
 Rights to a Public Trial and a Trial by Jury {¶ 11} In his first assignment of error, Walker argues that his rights to a public trial and a trial by jury were violated when the trial court failed to disclose a portion of a note from the jury.
 {¶ 12} While the jury was deliberating, it sent several communications to the trial court. One communication is at issue in this appeal. The trial court only shared a portion of this particular communication with Walker and the state. The entire communication from the jury read, "We are unable to settle key pieces of testimony from N.Y. and Mr. Walker in order to agree on any count of the allegations. We would like to hear, one, both prosecutor and defense portions of N.Y. testimony related to the sexual conduct allegations and descriptions of those acts. Two, Mr. Levi Walker's testimony. In order to clarify/settle the facts as testified and resolve our disagreements."
 {¶ 13} The trial court only shared the middle two sentences of this communication with Walker and the state. On the record, the trial court stated that it did not share the remaining comments "because I believe that they would improperly disclose the status of the jury's negotiations, and I believe that they are totally irrelevant to the substantive request of the jury."
 {¶ 14} Walker argues that the trial court's failure to disclose the remainder of the communication violated his right to a public trial and forced him to prepare transcripts of the testimony without knowing what the jury was looking for.
 {¶ 15} "The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio *Page 6 
Constitution."[2] But Walker's right to a public trial was neither implicated nor violated in this situation.
 {¶ 16} The purpose behind the right to a public trial is to ensure that a defendant receives a fair trial, one open to the public eye. As we have stated, "[a]n open courtroom is necessary to preserve and support the fair administration of justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly. Also, a public trial allows the general public to see that the defendant is `fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'"[3]
 {¶ 17} In this case, the issue is not whether the trial court properly excluded the public from the courtroom proceedings, but whether the trial court's failure to provide Walker with the entire communication from the jury was in error. We determine that it was not.
 {¶ 18} The trial court correctly noted that the portions of the communication not shared with Walker concerned the status of the jury's deliberations. The Eighth Appellate District has considered a similar, albeit more egregious, situation in State v. Hardy .[4] InHardy, the trial court had received numerous communications from the jury and had responded to several of the communications without consulting the parties. Several of these communications had concerned substantive matters, and the Hardy court determined that the trial court had erred in failing to address these *Page 7 
questions in the presence of the parties.[5] But three of these communications did not involve substantive matters and instead concerned the status of the jury's deliberations. Regarding these particular communications, the Hardy court concluded that "[t]hree of these were reports about the status of deliberations which did not require or receive a response."[6]
 {¶ 19} In the case before us, the trial court shared all substantive communications from the jury with Walker. The only communication not shared with Walker concerned the status of deliberations, which, as theHardy court noted, did not require a response.
 {¶ 20} Further support for the trial court's decision to keep private the status of deliberations can be found in the Ohio Jury Instructions. Instruction 415.05 concerns questions from the jury during deliberations, and it provides that "[i]f during your deliberations you have a question it should be discussed in the privacy of your jury room. It should not reflect the status of your deliberations."[7] And instruction 413.90 provides that "[u]ntil your verdict is announced in open court, you are not to disclose to anyone else the status of your deliberations or the nature of your verdict."[8]
 {¶ 21} We conclude that the trial court did not err in failing to disclose that portion of the jury's communication concerning the status of deliberations. Moreover, we note that Walker's argument that he was prejudiced by having to prepare transcripts without knowing what the jury desired is somewhat disingenuous. As a result of a later communication, the jury received a complete *Page 8 
transcript of N.Y.'s entire testimony. Thus, any portion of the transcript that Walker would have provided, or chosen not to provide, if he had known the entire content of the communication was later provided to the jury.
 {¶ 22} Walker's first assignment of error is overruled.
 Juror Misconduct {¶ 23} In his second assignment of error, Walker argues that the trial court erred in not conducting a voir dire of the entire jury and declaring a mistrial after a juror had made contact with a witness for the prosecution.
 {¶ 24} A juror had approached Sharon Dickman, a prosecution witness and a sexual-assault nurse examiner for Children's Hospital, and asked to shake Dickman's hand. Someone who had observed this incident brought it to the attention of the trial court. The trial court questioned this observer, who stated that no other members of the jury panel were present when the juror had approached Dickman. The trial court also questioned the juror involved. This juror stated that he had not discussed the case or his opinion with any other members of the jury panel, and that no other jurors had been present when he had approached Dickman.
 {¶ 25} The trial court excused this juror and replaced him with an alternate. Walker now argues that the trial court should have questioned the entire jury panel regarding what had happened. We disagree.
 {¶ 26} "The trial court is vested with broad discretion to determine whether the juror misconduct would prevent a fair trial, and to take whatever actions are appropriate to ensure a fair trial."[9] In this case, the trial court properly excused the juror who had made contact with the prosecution witness. And the trial court did not *Page 9 
abuse its discretion by failing to question the entire jury panel and to declare a mistrial.
 {¶ 27} Both the juror involved and the observer of the incident testified that no other jurors had been present when this incident occurred, and the excused juror stated that he had not communicated his opinion or views to the rest of the panel. Given that the other jurors were unaware of the contact between Dickman and their fellow juror, we are persuaded that the trial court appropriately declined to conduct a voir dire of the entire panel. Bringing the incident to the jury's attention could potentially have created prejudice where none had existed before.
 {¶ 28} Walker's second assignment of error is overruled.
 Hearsay {¶ 29} In his third assignment of error, Walker argues that the trial court erred in allowing hearsay testimony from Kay Fields, a sexual-abuse investigator at the Children's Hospital Mayerson Center.
 {¶ 30} Fields had interviewed N.Y. at the Mayerson Center on February 2, 2006. During the interview, N.Y. had described the sexual abuse that she had suffered at the hands of Walker. Fields testified at trial about N.Y.'s statements describing the abuse.
 {¶ 31} Walker first alleges that the trial court admitted this testimony in violation of his right to confront the witnesses against him. We recently addressed this issue in State v. Tapke.[10]Tapke involved statements made to a social worker at the Mayerson Center by a child victim of sexual abuse. The child's statements were contained in the social worker's report, which was introduced at trial. The social *Page 10 
worker did not testify. Tapke had argued that the statements contained in the report violated his rights under the Confrontation Clause.
 {¶ 32} The Tapke court first noted that the Confrontation Clause only barred the use of testimonial statements.[11] The court then determined that "[s]ince [the victim] had made her statements during an emergency-room examination, an objective witness would have believed that any statements made were for health-related reasons and not for use later at a trial."[12] Because the child victim had not given the statements with the belief that they would be later used at trial, theTapke court concluded that the statements were not testimonial and did not violate the Confrontation Clause.[13]
 {¶ 33} The statements at issue in this case are identical to the statements that were at issue in Tapke. But in Tapke, the statements had been contained in a report, whereas, in the case sub judice, Fields had actually testified about the statements. This is a distinction without a difference. N.Y. gave these statements during an emergency-room examination that took place shortly after she had informed her mother about the sexual abuse that she had suffered. The record contains no evidence that N.Y. believed that these statements would later be used at trial.
 {¶ 34} Moreover, N.Y. testified during trial and was subject to cross-examination on these statements.[14] In fact, N.Y. referred to the statements that she had provided to Fields during her testimony. The statements were nontestimonial and did not violate Walker's right to confront the witnesses against him. *Page 11 
 {¶ 35} Walker further argues that Fields' testimony concerning the statements made by N.Y. violated Evid.R. 802 and Evid.R. 807. Walker is incorrect. Evid.R. 802 contains a general proscription against hearsay. But Evid.R. 803 contains numerous exceptions to this general proscription. And Fields' statements fell within an exception contained in Evid.R. 803.
 {¶ 36} Evid.R. 803(4) provides that statements made for the purpose of medical diagnosis or treatment are not excludable as hearsay. In this case, the statements N.Y. gave to Fields at the Mayerson Center were for the purposes of medical diagnosis or treatment. Walker argues that the statements could not have been made for such a purpose because Fields was a sexual-abuse investigator and did not treat patients, but we disagree.
 {¶ 37} This court has previously held that statements given to persons other than a treating physician or nurse, such as a social worker, are admissible under Evid.R. 803(4) as statements made for the purpose of medical diagnosis and treatment.[15]
 {¶ 38} Moreover, although Fields had conducted the interview with N.Y., she provided N.Y.'s statements to both Sharon Dickman and Dr. Shapiro, who had relied on the statements when examining N.Y. The Mayerson Center is a child-advocacy center. It is a multidisciplinary facility that has representatives from various agencies, including medical staff from Children's Hospital, the Cincinnati police, a social worker, and a victim's advocate from the Hamilton County Prosecutor's Office. Rather than have a child victim of abuse sit through an interview with each of these agencies, the center has one representative interview the child to meet the needs of *Page 12 
each discipline. The information obtained during the interview is utilized by the medical staff to help diagnose or treat the child.
 {¶ 39} N.Y.'s statements to Fields were made for the purpose of medical treatment or diagnosis. Fields' testimony concerning these statements was admissible under Evid.R. 803(4) and did not violate Evid.R. 802's proscription against hearsay.
 {¶ 40} We now consider Walker's argument that Fields' testimony was admitted in violation of Evid.R. 807. Evid.R. 807 concerns the testimony of children in abuse cases. The rule establishes a process for the trial court to determine whether an out-of-court statement given by a child under 12 years of age is not hearsay and thus admissible.
 {¶ 41} N.Y. was 12 years old at the time that she testified against Walker. Evid.R. 807 only applies to statements given by children under 12 years of age. Thus, it was not applicable in this case.
 {¶ 42} Further, if a statement has been admitted under Evid.R. 803(4), an analysis under Evid.R. 807 is not required.[16] The Supreme Court of Ohio has explained the fundamental difference between these two rules of evidence: "Evid.R. 807's `totality of the circumstances' test is designed specifically with the Confrontation Clause requirements in mind * * *. On the other hand, the test under 803(4) goes solely to whether the statement was made for purposes of medical diagnosis or treatment. If a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)."[17] Because Fields' testimony about N.Y.'s statements was admissible under Evid.R. 803(4), an Evid.R. 807 *Page 13 
analysis was not necessary. This would have held true even if N.Y. had been under 12 years of age.
 {¶ 43} The trial court did not err in admitting Fields' testimony. The third assignment of error is overruled.
 Alleged Prosecutorial Misconduct {¶ 44} In his fourth assignment of error, Walker argues that he was denied his right to a fair trial due to prosecutorial misconduct during closing argument.
 {¶ 45} To establish prosecutorial misconduct, a defendant must show that the prosecutor's remarks were improper and that they prejudicially affected the defendant's substantial rights.[18] We are mindful that "the prosecution is normally entitled to a certain degree of latitude in its closing remarks."[19] Further, the prosecutor's statements must not be evaluated in isolation, but in light of the entire closing argument.[20]
 {¶ 46} During closing argument, the prosecutor stated that "sometimes kids grow up, they worry about the monster under the bed or monster in the closet. [N.Y.'s] monster was real. It was her stepfather. He didn't necessarily come across as sharp teeth, claws, but it came in the form of what he did to her."
 {¶ 47} While this language is strong, the facts of this case arguably support such a characterization.[21] The prosecutor's remarks were not improper, and Walker's fourth assignment of error is overruled. *Page 14 
 Sufficiency and Weight of the Evidence {¶ 48} In his fifth assignment of error, Walker argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 49} When reviewing the sufficiency of the evidence, this court is not permitted to weigh the evidence.[22] We must view the evidence and all reasonable inferences in the light most favorable to the prosecution to determine whether a rational trier of fact could have found all the elements of the offense proved beyond a reasonable doubt.[23]
 {¶ 50} In contrast, when reviewing the manifest weight of the evidence, this court sits as a "thirteenth juror."[24] We review the record, weigh the evidence, and consider the credibility of the witnesses to determine whether the jury lost its way and created a manifest miscarriage of justice.[25]
 {¶ 51} Walker was convicted of three counts of rape under R.C.2907.02(A)(1)(b). This provision states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct means "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal *Page 15 
intercourse."[26] Each of Walker's convictions for rape concerned a different type of sexual act, specifically fellatio, vaginal intercourse, and anal intercourse.
 {¶ 52} N.Y. testified in detail about the sexual abuse that Walker had committed against her. She testified as to the obvious, that she was not Walker's spouse, and that she had been between 10 and 12 years of age at the time that she was abused. And N.Y.'s testimony was sufficient to establish sexual conduct. She testified that Walker had made her suck on his penis, that he had inserted his penis halfway into both her vagina and her anus, and that he had only removed it after N.Y. told him that it was painful. This was sufficient to demonstrate penetration.
 {¶ 53} Walker points to the lack of physical evidence and the credibility of N.Y. in support of his argument. But both Sharon Dickman and Dr. Shapiro testified that it was normal for victims of N.Y.'s age not to have visible injuries or signs of abuse. And the jury was in the best position to judge the credibility of the witnesses. It was entitled to believe N.Y.'s testimony and to reject Walker's statement that he had not abused N.Y.
 {¶ 54} We conclude that Walker's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The fifth assignment of error is overruled.
 Freedom of Movement and Travel {¶ 55} In his sixth assignment of error, Walker argues that the trial court's order under R.C. 2950.031 that he not reside within 1000 feet of any school violated his rights of due process, freedom of movement, and freedom of travel. *Page 16 
 {¶ 56} We note that, as of July 1, 2007, R.C. 2950.031 has been renumbered R.C. 2950.034. This statute prohibits any person who has been convicted of or pled guilty to certain sexually oriented offenses or child-victim-oriented offenses from residing within 1000 feet of any school premises.
 {¶ 57} The state argues that this assignment of error is not ripe for our review. We agree. The ripeness doctrine prevents courts from becoming involved in disputes or problems that have not yet come to fruition.[27] "The basic premise of the doctrine is that the judicial process should be reserved for problems that are real or present and imminent, not squandered on problems that are abstract, hypothetical or remote."[28]
 {¶ 58} Walker is currently incarcerated, and he most likely will remain so for the next 24 years. Consequently, he has not attempted to reside, or been prohibited from residing, within 1000 feet of a school. Because Walker has suffered no actual deprivation, his assignment of error is not ripe for review and is overruled.[29] Sentencing {¶ 59} In his seventh assignment of error, Walker argues that the trial court erred in the imposition of sentence. Specifically, Walker alleges that the trial court should have applied the sentencing scheme in effect at the time that he had committed his offenses, and that the trial court's application of State v. Foster3[30] violated the Ex Post Facto Clause. *Page 17 
 {¶ 60} Walker's argument is without merit. This court has previously determined that the application of Foster does not violate the Ex Post Facto Clause.[31] Following Foster, trial courts are no longer required to make findings or provide supporting reasons before imposing more than the minimum, maximum, or consecutive sentences.[32] Trial courts may now impose any sentence within the available statutory range.[33]
 {¶ 61} Walker's sentence fell within the available statutory range. The trial court did not err in the imposition of sentence, and the seventh assignment of error is overruled.
 {¶ 62} Accordingly, the judgment of the trial court is affirmed. Judgment affirmed.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] Because Christy Walker has the same surname as the appellant, we refer to her as Christy throughout this decision.
[2] State v. Sanders (1998), 130 Ohio App.3d 92, 96,719 N.E.2d 619.
[3] Id. at 96-97; accord In re Oliver (1948), 333 U.S. 257, 270, 68 S.Ct. 499, fn. 25.
[4] State v. Hardy, 8th Dist. No. 82620,2004-Ohio-56.
[5] Id at ¶ 17.
[6] Id. at ¶ 11.
[7] 4 Ohio Jury Instructions (2007), Section 415.05.
[8] 4 Ohio Jury Instructions (2007), Section 413.90.
[9] State v. Sheppard (June 11, 1997), 1st Dist. Nos. C-950402 and C-950744.
[10] State v. Tapke, 1st Dist. No. C-060494,2007-Ohio-5124.
[11] Id. at ¶ 68.
[12] Id. at ¶ 73.
[13] Id. at ¶ 74.
[14] Id.
[15] See State v. Abdur-Rahman (Oct. 23, 1996), 1st
Dist. No. C-950942. See, also, State v. Cole (Oct. 7, 1993), 1st Dist. No. C-920873.
[16] See State v. Muttart, ___ Ohio St.3d ___, 2007-Ohio-5267, ___ N.E.2d ___, ¶ 37.
[17] Id., quoting State v. Dever, 64 Ohio St.3d 401, 414,1992-Ohio-41, 596 N.E.2d 436.
[18] State v. Smith (1998), 130 Ohio App.3d 360, 366,720 N.E.2d 149.
[19] State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883.
[20] State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246, at ¶ 22, citing State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 203.
[21] See State v. Wiles (1991), 59 Ohio St.3d 71, 87,571 N.E.2d 97.
[22] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[23] Id.
[24] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[25] Id.
[26] R.C. 2907.01(A).
[27] See Hyle v. Porter, 170 Ohio App.3d 710, 2006-Ohio-5454,868 N.E.2d 1047, ¶ 21.
[28] Id.
[29] See, State v. Worst, 12th Dist. No. CA2004-10-270,2005-Ohio-6550, ¶¶ 34-36.
[30] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
[31] See State v. Bruce, 170 Ohio App.3d 92, 2007-Ohio-175,866 N.E.2d 44.
[32] Foster, supra, 2006-Ohio-856, at paragraph seven of the syllabus.
[33] Id. *Page 1