The STATE of Ohio, Appellee,

v.

HARRIS, Appellant.

[Cite as State v. Harris, 163 Ohio App.3d 286, 2005-Ohio-4696.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050021.

Decided Sept. 9, 2005.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James Michael Keeling, Assistant Prosecuting Attorney, for appellee.

Dan Wong, for appellant.

SUNDERMANN, Judge.

{¶ 1} Dontay Harris appeals his conviction for domestic violence. We reverse the judgment of the trial court and discharge Harris from further prosecution.

{¶ 2} On October 9, 2004, police officer Gary Huddleston responded to a dispute in the area of a restaurant and a gas station. When he arrived on the scene, he approached Alicia Clayton, who was walking on the sidewalk. Clayton was crying and screaming, and her face and hands were covered with blood. Huddleston asked Clayton what had happened, and Clayton pointed at Harris and said, "He hit me in the face with his hand." Huddleston drove Clayton back to the police station. While at the station, Clayton stated that Harris was the father of her baby.

{¶ 3} Harris was charged with domestic violence in violation of R.C. 2919.25(A). After a trial to the court, the court found Harris guilty and sentenced him to 180 days in jail, with 179 days suspended and one day credited. The trial court also fined Harris $50 and placed him on electronic monitoring for 90 days.

{¶ 4} Because it affects our conclusion regarding the first assignment of error, we consider the second assignment of error first. In it, Harris claims that the trial court erred in admitting hearsay testimony about the statement Clayton made at the police station.

{¶ 5} Clayton did not testify at trial. To get into evidence her statement that Harris was the father of her baby, Huddleston was questioned about the statement Clayton made at the police station. Harris's counsel objected to the statement as hearsay, and the trial court sustained the objection. The prosecuting attorney then attempted to have the statement allowed into evidence as an excited utterance. Although he did not object to a leading question by the prosecutor that restated that Harris was the father of Clayton's baby, defense counsel made clear to the trial court that his objection to the testimony about Clayton's statement was a continuing objection. Huddleston testified that when Clayton made the statement at the station, "[s]he was calming down, but she was still upset." According to Huddleston, at the time of the statement, Clayton "was still shaking and physically crying, but she had somewhat—she wasn't screaming and yelling and basically just being out of control." The trial court overruled Harris's objection to the testimony, concluding that the statement was an excited utterance and therefore admissible under Evid.R. 803(2).

{¶ 6} We review the trial court's decision to admit the statement to determine whether the court's decision was reasonable.[1] Along with present-

---

1. *State v. Duncan* (1978), 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 373 N.E.2d 1234.

sense impression, an excited utterance is a type of res-gestae declaration that is excepted from the rule prohibiting hearsay evidence.[2]   An excited utterance, despite being hearsay, is considered trustworthy because when it is made, the declarant is in such emotional shock that the statement cannot be the result of reflective thought.[3]

{¶ 7} There is no indication in the record about how much time had elapsed between Huddleston's arrival at the crime scene and Clayton's statement at the station.   But while the timing of the statement may have indicated whether Clayton was still under the emotional shock of the altercation, it is not the determinative issue.   Instead, the issue is whether Clayton's statement was the result of reflective thought.   We conclude that Huddleston's testimony made clear that the statement was the result of reflective thought.   Huddleston testified that after Clayton had calmed down at the station, he asked her, "[W]ho was that and what happened?"   Although Clayton was understandably still upset due to the altercation, her responses about the incident and her identification of Harris as her boyfriend and the father of her baby were clearly the result of reflective thought.   The statement was not a spontaneous statement related to the startling occurrence of the altercation, but rather an answer to a question from a police officer.   Accordingly, we conclude that the trial court's decision to admit the statement under the excited-utterance exception to the hearsay rule was erroneous.   The second assignment of error is sustained.

{¶ 8} In his first assignment of error, Harris claims that the trial court erred in convicting him because the evidence was legally insufficient.   A sufficiency argument challenges whether the state presented adequate evidence on each element of the offense.[4]   R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Under R.C. 2919.25(F)(1)(b), a family member is defined in part as "[t]he natural parent of any child of whom the offender is the other natural parent * * *." Because we have concluded that Clayton's statement that Harris was the father of her baby should not have been admitted at trial, and because no other evidence of a familial relationship between Clayton and Harris was introduced, the state failed to prove an essential element of domestic violence.   Harris's first assignment of error is well taken, and we therefore reverse the judgment of the trial court and order that Harris be discharged from further prosecution.   Our ruling

---

2.   *State v. Wallace* (May 27, 1987), 1st Dist. No. C–860460, 1987 WL 11603.

3.   Id.

4.   See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

on the first two assignments of error render Harris's third assignment of error moot, and we therefore decline to address it.

Judgment reversed
and appellant discharged.

HENDON, J., concurs.

GORMAN, P.J., concurs separately.

GORMAN, Presiding Judge, concurring separately.

{¶ 9} I agree with the majority that the conviction should be reversed because the evidence was legally insufficient. However, with respect to the hearsay rule, a constitutional issue transcends in importance the rule of evidence. Even if Clayton's statements at the station were admissible as excited utterances under Evid.R. 803(2), they were in response to structured official questioning by Officer Huddleston. Therefore, her identification of Harris as the father of her baby was testimonial hearsay as that term is described in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. As Clayton was absent at the trial and unavailable for cross-examination, the admission of her statements at the station through Officer Huddleston violated Harris's Sixth Amendment right to confront the witnesses against him.