The STATE of Ohio, Appellee,

v.

LUKACS, Appellant.

[Cite as *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–090309 and C–090310.

Decided May 28, 2010.

598

600

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Bryan R. Perkins, for appellant.

DINKELACKER, Judge.

{¶ 1} Defendant-appellant, Christopher Lukacs, appeals convictions for three counts of rape under R.C. 2907.02(A)(1)(b), one count of rape under R.C. 2907.02(A)(2), one count of felonious assault under R.C. 2903.11(A)(1), and one count of failure to verify his address under R.C. 2950.06. We find no merit in his 13 assignments of error, and we affirm his convictions.

## I. Confrontation and Hearsay

{¶ 2} In his first and second assignments of error, Lukacs contends that the trial court erred by admitting numerous statements because they were inadmissible hearsay. He also contends that the admission of the statements violated his right to confront the witnesses against him. These assignments of error are not well taken.

{¶ 3} The victim in this case was V.L., Lukacs's four-year-old daughter. The trial court found her incompetent to testify. The court found Z.L., her older brother, to be competent to testify, and he did testify at trial. The state introduced both children's out-of-court statements into evidence.

### A. Victim's Statements to Tammy Vogelgesang

{¶ 4} Tammy Vogelgesang, a social worker at Children's Hospital, interviewed V.L. The interview was recorded on a DVD, which was played for the jury. Additionally, Vogelgesang testified about some of the victim's statements. Those statements were admissible under Evid.R. 803(4) as statements for purposes of medical diagnosis or treatment.

{¶ 5} Evid.R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The Ohio Supreme Court has held that a child's statements may be admissible under this exception regardless whether that child has been found competent to testify.[1]

{¶ 6} Further, statements given to persons other than a treating physician or nurse, such as a social worker, can be admissible under this exception.[2] Even the identity of the perpetrator of sexual abuse may be pertinent to diagnosis and treatment because it may assist medical personnel with assessing the emotional and psychological impact of the abuse on a child and in formulating a treatment plan.[3]

{¶ 7} The trial court's determination whether the child's statements were for the purpose of medical diagnosis or treatment depends upon the facts of the particular case. It includes such considerations as (1) whether the child was questioned in a leading or suggestive manner, (2) whether a motive to fabricate, such as a custody battle, existed, (3) whether the child understood the need to tell medical personnel the truth, (4) the child's age, and (5) the consistency of the child's declarations.[4] The decision whether to admit testimony under this hearsay exception rests within the trial court's discretion.[5]

{¶ 8} The record shows that Vogelgesang's interview was part of an ongoing attempt to determine the extent of the sexual abuse and the appropriate treatment for the victim. Vogelgesang did not use leading questions. No motive to fabricate existed, and V.L.'s statements were consistent with the physical evidence. We cannot hold that the trial court's decision to admit the statements was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[6]

---

1. *State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, syllabus.

2. *State v. Walker,* 1st Dist. No. C–060910, 2007-Ohio-6337, 2007 WL 4208710, ¶ 37.

3. *State v. Dever* (1992), 64 Ohio St.3d 401, 413, 596 N.E.2d 436; *State v. McGovern,* 6th Dist. No. E–08–066, 2010-Ohio-1361, 2010 WL 1223903, ¶ 37; *State v. Jordan,* 10th Dist. No. 06AP–96, 2006-Ohio-6224, 2006 WL 3411420, ¶ 20.

4. *Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 49; *State v. Tebelman,* 3rd Dist. No. 12–09–01, 2010-Ohio-481, 2010 WL 529496, ¶ 37.

5. *Muttart* at ¶ 48.

6. See *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331.

{¶ 9} Since we have held that the statements were admissible under the exception in Evid.R. 803(4), we need not determine whether they were admissible under Evid.R. 807, the exception for a child's statements in abuse cases.[7] Further, even if the admission of the statements was erroneous, any error was harmless because V.L. said little that implicated Lukacs.[8]

{¶ 10} Lukacs also argues that the statements' admission violated his right to confront the witnesses against him. The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*,[9] the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross examination."[10]

{¶ 11} The court distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause.[11] Further, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.[12] Courts have permitted the introduction of testimonial statements when the testimony provided background information or context for the investigation.[13]

{¶ 12} The Ohio Supreme Court has held that statements made for medical diagnosis and treatment under the hearsay exception in Evid.R. 803(4) are not testimonial. They are not "inadmissible under *Crawford,* because they are not even remotely related to the evils which the Confrontation Clause was designed

7. *Muttart* at ¶ 37–38; *Walker,* 2007-Ohio-6337, 2007 WL 4208710, at ¶ 40–42.

8. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph seven of the syllabus, death penalty vacated (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155; *State v. Williams,* 1st Dist. Nos. C–060631 and C–060668, 2007-Ohio-5577, 2007 WL 3036611, ¶ 39; *State v. Brundage,* 1st Dist. No. C–030632, 2004-Ohio-6436, 2004 WL 2757605, ¶ 33.

9. (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

10. Id. at 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177; *State v. Baldwin,* 1st Dist. No. C–081237, 2009-Ohio-5348, 2009 WL 3236196, ¶ 12.

11. *Crawford* at 68; *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15–16; *State v. Matthews,* 1st Dist. Nos. C060669 and C–060692, 2007-Ohio-4881, ¶ 10.

12. *Matthews* at ¶ 10; *State v. Lewis,* 1st Dist. Nos. C–050989 and C–060010, 2007-Ohio-1485, 2007 WL 936571, ¶ 41.

13. *Matthews* at ¶ 10; *Lewis* at ¶ 41.

to avoid."[14] Consequently, the admission of V.L.'s statement to Vogelgesang did not violate Lukacs's right to confront the witnesses against him.

### B. Older Brother's Statements to Tammy Vogelgesang

{¶ 13} Vogelgesang also interviewed Z.L., the victim's older brother. The interview was recorded and played for the jury. His statements were also admissible as statements for medical diagnosis and treatment. There was concern that he, too, was a victim of sexual abuse. He revealed that he had been a witness to the abuse of his sister. As a result of this interview, a treatment plan was formulated for him that included psychological counseling. Under the circumstances, we cannot hold that the trial court abused its discretion in admitting his statements into evidence.

{¶ 14} Z.L.'s statements would also have been admissible under Evid.R. 801(D)(1)(b). It provides that a statement is not hearsay if "[t]he declarant testifies at a trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." In determining whether to admit a prior consistent statement, a trial court should take a generous view of " 'the entire trial setting to determine if there was sufficient impeachment to amount to a charge of fabrication or improper influence or motivation.' "[15]

{¶ 15} Z.L. testified at trial and was subject to cross-examination. Lukacs's defense throughout the trial was that both children had been coached by their mother, their grandparents, and others to accuse him of abuse. Z.L.'s recorded statements were consistent with his testimony at trial. Sufficient impeachment occurred to amount to a charge of recent fabrication at trial, and the trial court did not err in admitting Z.L.'s statements into evidence.[16] Further, since Z.L. testified at trial, the Confrontation Clause was not implicated, and the admission of the recorded interview did not violate Lukacs's right to confront the witnesses against him.[17]

---

14. *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 63; *State v. Driscoll*, 2nd Dist. No.2008 CA 93, 2009-Ohio-6134, 2009 WL 3955951, ¶ 40; *State v. Kapp*, 3rd Dist. No. 1–09–12, 2009-Ohio-5081, 2009 WL 3068808, ¶ 17–18.

15. *State v. Jones*, 1st Dist. No. C–080518, 2009-Ohio-4190, ¶ 35, quoting *State v. Grays* (2001), 12th Dist. No. CA2001–02–007, 2001-Ohio-8679, 2001 WL 1302551; *State v. Lopez* (1993), 90 Ohio App.3d 566, 578, 630 N.E.2d 32.

16. See *Jones* at ¶ 36–37; *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008-Ohio-6260, 2008 WL 5077638, ¶ 56–65.

17. *State v. Williams*, 12th Dist. No. CA2007–04–087, 2008-Ohio-3729, 2008 WL 2875008, ¶ 31; *State v. Carter*, 7th Dist. No. 05 JE 7, 2007-Ohio-3502, 2007 WL 1976666 ¶ 85.

### C. Victim's Statements to Stacia Stroer

{¶ 16} Next, Lukacs takes issue with the trial court's decision to allow Stacia Stroer, a social worker at Hamilton County Job and Family Services ("HCJFS"), to testify about numerous hearsay statements that the victim had made to her. Again, these statements fall under the exception for statements made for medical diagnosis and treatment under Evid.R. 803(4).

{¶ 17} Ambre King, the victim's mother, had been arguing with Lukacs over his conduct with the victim. Lukacs punched Ambre, took her credit card and her cellular phone, and left the house. Ambre called her parents, Mark and Gwen King, and asked them to come get the children because they were in danger. When Mark King came to the apartment, he found V.L. naked and withdrawn. He took her and her brother to his home. He and his wife became concerned about the children's physical and mental condition, so they called HCJFS.

{¶ 18} Stroer came to interview the children as a first step in diagnosing the problem. She testified that she had no information about sexual abuse until V.L. spontaneously revealed that information during the interview.

{¶ 19} Under the circumstances, we cannot hold that the trial court's decision to allow Stroer to testify regarding the victim's statements was an abuse of discretion.[18] Further, since the statements were admissible under Evid.R. 803(4) as statements for medical diagnosis and treatment, they were not testimonial, and their admission into evidence did not violate the Confrontation Clause.[19]

{¶ 20} V.L.'s statements to Stroer would also have been admissible as excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[20] Excited utterances are reliable because they do not entail an opportunity for the declarant to reflect, thus reducing the chance to fabricate or distort the truth.[21]

{¶ 21} In analyzing whether a statement is an excited utterance, "[t]he controlling factor is whether the declaration was made under such circum-

---

18. See *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 48–49; *Walker*, 2007-Ohio-6337, 2007 WL 4208710, at ¶ 36–39.

19. See *Muttart* at ¶ 61–63; *Driscoll*, 2009-Ohio-6134, 2009 WL 3955951, at ¶ 40; *Kapp*, 2009-Ohio-5081, 2009 WL 3068808, at ¶ 17–18.

20. Evid.R. 803(2).

21. *State v. Wallace* (1988), 37 Ohio St.3d 87, 88, 524 N.E.2d 466; *State v. Harris*, 163 Ohio App.3d 286, 2005-Ohio-4696, 837 N.E.2d 830, ¶ 6.

stances as would reasonably show that it resulted from impulse rather than reason and reflection."[22] Courts liberally apply this test to out-of-court statements made by children because of their limited powers of reflection.[23] Further, the passage of time is not dispositive of whether a statement is an excited utterance, particularly in the case of child-abuse victims, who are likely to remain in a state of nervous excitement longer than an adult.[24]

{¶ 22} In this case, the sexual abuse had taken place over an extended period of time. Ambre, the child's mother, had always received a violent response when she questioned Lukacs about the abuse and, therefore, did not question the victim. When Lukacs was present, the victim withdrew and did not want to be alone with him. The Kings, who were concerned about their grandchildren, did not question them directly, but called HCJFS. Stroer was the first person to talk to V.L. about her condition while she was in a safe environment.

{¶ 23} Thus, the evidence showed that V.L. was in a state of nervous excitement caused by startling events and that she did not have the ability to reflect and fabricate. Therefore, the trial court did not abuse its discretion in allowing Stroer to testify regarding her out-of-court statements.[25]

 {¶ 24} Further, the admission into evidence of V.L.'s statements to Stroer as excited utterances would not violate the Confrontation Clause. In the context of excited utterances made to police officers, the United States Supreme Court has held that the key to determining whether statements are testimonial is whether the questioning by police or a police counterpart sought information needed to respond to a present emergency or sought information about past events as part of its investigation of a crime.[26]

{¶ 25} Even if we consider Stroer a police counterpart, during her interview with the victim, she was not trying to investigate a crime; she was responding to the present emergency of determining whether the victim and her brother

**22.** *Tebelman*, 2010-Ohio-481, 2010 WL 529496, at ¶ 29, quoting *State v. Humphries* (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921.

**23.** *State v. Taylor* (1993), 66 Ohio St.3d 295, 304, 612 N.E.2d 316; *Tebelman* at ¶ 29.

**24.** *Taylor* at 304, 612 N.E.2d 316; *State v. Girts*, 5th Dist. No. 08–CA–31, 2009-Ohio-3422, 2009 WL 2006703, ¶ 17.

**25.** See *State v. Duncan* (1978), 53 Ohio St.2d 215, 219–220, 7 O.O.3d 380, 373 N.E.2d 1234; *Tebelman*, 2010-Ohio-481, 2010 WL 529496, at ¶ 27; *State v. Abdur–Rahman* (Oct. 23, 1996), 1st Dist. No. C–950942, 1996 WL 603796.

**26.** *Davis v. Washington* (2006), 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 100–102; *State v. Cotton*, 6th Dist. No. L–09–1050, 2010-Ohio-804, 2010 WL 746756, ¶ 15–17; *State v. Quinn*, 6th Dist. No. L–05–1302, 2007-Ohio-878, 2007 WL 625895, ¶ 31.

needed to be formally removed from their home and receive treatment. Consequently, the statements were not testimonial, and the trial court did not err in admitting them into evidence.

### D. Both Children's Statements to Perry McCool

{¶ 26} Finally, Lukacs contends that Perry McCool should not have been allowed to testify about hearsay statements that both V.L. and Z.L. had made. The record shows that McCool was the therapist for both children. The hearsay statements to which he testified obviously fell under the exception in Evid.R. 803(4) for statements made for the purpose of medical diagnosis and treatment. Consequently, the trial court did not abuse its discretion in admitting those statements into evidence.[27]

### II. Testimony by Remote Video

{¶ 27} Lukacs also contends under these assignments of error that the trial court erred in allowing Z.L. to testify by remote video from outside the courtroom. He argues that the trial court did not comply with the statute allowing the use of this procedure and that its use violated his right to confront the witnesses against him. This assignment of error is not well taken.

{¶ 28} R.C. 2945.481(C) permits a court to allow a victim of certain offenses who is under the age of 13 to testify from a room outside the courtroom and to have the testimony televised for viewing by the jury in the courtroom. A child who witnesses the sexual abuse of another child can be a victim within the meaning of the statute.[28]

{¶ 29} The Ohio Supreme Court has held that the procedure in a previous version of this statute did not violate the defendant's right to confront the witnesses against him.[29] It stated, "Literal face-to face confrontation is not the *sine qua non* of the confrontation right. Admittedly, a defendant is ordinarily entitled to a face-to-face confrontation at trial. However, physical confrontation may constitutionally be denied where the denial is necessary to further an important public policy and 'the reliability of the testimony is otherwise assured.' "[30] It went on to state that the underlying value of the Confrontation

---

27. *Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 48; *Walker,* 2007-Ohio-6337, 2007 WL 4208710, at ¶ 36–40.

28. *In re Howard* (1997), 119 Ohio App.3d 33, 40–41, 694 N.E.2d 488.

29. *State v. Self* (1990), 56 Ohio St.3d 73, 78, 564 N.E.2d 446; *State v. Marcinick,* 8th Dist. No. 89736, 2008-Ohio-3553, 2008 WL 2766174, ¶ 19.

30. (Citations omitted.) *Self* at 77, 564 N.E.2d 446, quoting *Maryland v. Craig* (1990), 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d 666.

Clause is the right to cross-examination.[31]

{¶ 30} We cannot hold that the use of the procedure in this case violated Lukacs's right to confront the witnesses against him. He had an ample opportunity to cross-examine the witness and to see him over the video feed.

{¶ 31} Admittedly, the trial court did not follow the procedures set forth in the statute for determining the necessity of allowing the witness to testify outside the courtroom.[32] But Lukacs did not object to the procedure, and we can reverse only upon a finding of plain error.[33] We are satisfied from our review of the record that the findings would have been supported by the evidence. We cannot hold that but for the error, the results of the proceeding would have been otherwise. Therefore, any error did not rise to the level of plain error.[34] We overrule Lukacs's first and second assignments of error.

### III. Vouching for the Witnesses' Credibility

{¶ 32} In his third assignment of error, Lukacs contends that the trial court erred in permitting three of the state's witnesses to vouch for the witnesses' credibility. He argues that these witnesses improperly testified that both V.L. and Z.L. were telling the truth and had not been coached. This assignment of error is not well taken.

{¶ 33} In *State v. Boston*,[35] the Ohio Supreme Court held that an expert witness may not testify as to the expert's opinion of "the veracity of the statements of a child declarant."[36] The trial court, over objection, allowed Stroer to testify that V.L. had not been coached and was telling the truth about the abuse. *Boston* clearly prohibits this testimony, and the trial court erred in admitting it into evidence. Nevertheless, given the quantum of evidence against

31. *Self* at 77, 564 N.E.2d 446; *Marcinick* at ¶ 20.

32. See R.C. 2945.481(E).

33. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332; *Baldwin*, 2009-Ohio-5348, 2009 WL 3236196, at ¶ 6; *State v. Hirsch* (1998), 129 Ohio App.3d 294, 309, 717 N.E.2d 789.

34. *State v. Wickline* (1998), 50 Ohio St.3d 114, 119–120, 552 N.E.2d 913; *Baldwin* at ¶ 6; *State v. Burrell*, 1st Dist. No. C–030803, 2005-Ohio-34, 2005 WL 27469, ¶ 15.

35. (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, overruled on other grounds by *Dever*, 64 Ohio St.3d 401, 596 N.E.2d 436.

36. *Boston* at syllabus; *State v. Books*, 4th Dist. No. 08CA51, 2009-Ohio-5018, 2009 WL 3049357, ¶ 22; *State v. Netherland* (1999), 132 Ohio App.3d 252, 257, 724 N.E.2d 1182.

Lukacs, no reasonable probability exists that it would have contributed to his conviction. Therefore, any error was harmless.[37]

{¶ 34} The court also allowed McCool, the children's therapist, to testify that they had not been coached. Again, this testimony was improper under *Boston*. But Lukacs did not object to his testimony, and we can reverse only upon a finding of plain error.[38] Given the amount of evidence against Lukacs, we cannot hold that but for the error, the results of the proceeding would have been otherwise. Therefore, no plain error occurred.[39]

{¶ 35} Lukacs also contends that the trial court should not have allowed Dr. Berkeley Bennett, a sexual-abuse expert who examined both the victim and her brother, to testify that in her opinion, V.L. had been sexually abused. The Supreme Court of Ohio has held that an expert witness may testify as to the ultimate issue in a case and nothing prohibits a witness from testifying that a child has been sexually abused.[40] Consequently, the trial court did not err in allowing Bennett's testimony into evidence, and we overrule Lukacs's third assignment of error.

## IV. Other Bad Acts

{¶ 36} In his fourth assignment of error, Lukacs contends that the trial court erred in allowing testimony regarding other bad acts. He contends that he was prejudiced by the testimony because its only purpose was to disparage his character and impermissibly portray him as a violent and bad man. This assignment of error is not well taken.

{¶ 37} Generally, the prosecution in a criminal trial may not present evidence that a defendant has committed other crimes or acts independent of the crime for which the defendant is being tried to establish that the defendant acted in conformity with his bad character.[41] But Evid.R. 404(B) provides that other bad

37. See *Bayless*, 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, at paragraph seven of the syllabus; *Williams*, 2007-Ohio-5577, 2007 WL 3036611, at ¶ 39.

38. *Underwood*, 3 Ohio St.3d 12, 13, 3 OBR 360, 444 N.E.2d 1332; *Baldwin*, 2009-Ohio-5348, 2009 WL 3236196, at ¶ 6; *Hirsch*, 129 Ohio App.3d at 309, 717 N.E.2d 789.

39. *Wickline*, 50 Ohio St.3d at 119–120, 552 N.E.2d 913; *Baldwin* at ¶ 6; *Burrell*, 2005-Ohio-34, 2005 WL 27469, at ¶ 15.

40. *State v. Stowers* (1998), 81 Ohio St.3d 260, 261–263, 690 N.E.2d 881; *Boston* at 128, 545 N.E.2d 1220; *State v. Austin* (1998), 131 Ohio App.3d 329, 336, 722 N.E.2d 555.

41. Evid.R. 404(B); *Hirsch*, 129 Ohio App.3d at 306, 717 N.E.2d 789.

acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[42]

{¶ 38} The trial court allowed Ambre King, the children's mother, to testify that Lukacs had hit her multiple times and had threatened her with a knife. She also testified that she and Lukacs had argued about her suspicions that he was sexually abusing V.L. In response to that argument, he punched her, took her credit card and cell phone, got into a truck that was in her name, and left the house. Afterward, Ambre left the house and called Mark King, her father, to pick up the children.

{¶ 39} The state presented this testimony, in part, to show why Ambre had never called the police about her suspicions and also to provide context for the events that occurred about that time, including Mark King's decision to come and pick up the children, take them from Lukacs, and have them examined. It was also relevant to show knowledge and the absence of a mistake. The testimony regarding these other acts was " 'inextricably interwoven' " with the crimes charged in the indictment and was " 'necessary to give a complete picture of what occurred.' "[43] Under the circumstances, the trial court did not err in admitting the evidence of other bad acts, and we overrule Lukacs's fourth assignment of error.

## V. Indictment

{¶ 40} In his fifth assignment of error, Lukacs contends that the trial court erred in permitting the state to alter its established theory of the case by alleging that the crimes took place at a different time from those alleged in the indictment and the bill of particulars. In his seventh assignment of error, he contends that the trial court erred by permitting the state to violate his rights by trying him on multiple, identical, and undifferentiated counts. In his eighth assignment of error, he contends that the trial court violated his rights under the Double Jeopardy Clause by trying and convicting him of multiple, undifferentiated counts. In all these assignments of error, Lukacs takes issue with the specificity of the indictment. We find no merit in his arguments.

{¶ 41} Under the United States and Ohio Constitutions, an individual accused of a felony is entitled to an indictment setting forth the "nature and cause of the accusation."[44] The government must aver all material facts consti-

---

**42.** *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065; *Hirsch* at 306, 717 N.E.2d 789.

**43.** See *State v. Kendrick,* 1st Dist. No. C–080509, 2009-Ohio-3876, 2009 WL 2413793, ¶ 24, quoting *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317–318, 18 O.O.3d 482, 415 N.E.2d 261. See also *Hirsch,* 129 Ohio App.3d at 307–308, 717 N.E.2d 789.

**44.** *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781; *State v. Buttrom* (Dec. 11, 1998), 1st Dist. No. C–970406, 1998 WL 852558.

tuting the essential elements of the offense so that the accused not only has adequate notice and an opportunity to defend but also may protect himself from any future prosecution for the same offending conduct.[45] But the indictment need not contain a recitation of the evidence supporting the various facts.[46]

{¶ 42} Precise dates and times are not essential elements of offenses, and the failure to provide them is not fatal to the indictment.[47] " '[L]arge time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.' "[48]

{¶ 43} The accused can obtain more specific details by requesting a bill of particulars as provided in Crim.R. 7(E). But it need not provide the accused with specifications of the evidence or serve as a substitute for discovery.[49] The state must supply specific dates and time in response to a request for a bill of particulars when it possesses that information. The failure to provide exact dates is fatal to the case only if the absence of specifics prejudices the accused's ability to prepare and present a defense.[50]

{¶ 44} Counts one and two of the indictment alleged that rapes occurred on or about January 3, 2008. The bill of particulars contained the same language. On that date, V.L. went to the hospital for severe vaginal bleeding. Lukacs claimed that she had fallen on a Lego block.

{¶ 45} Lukacs contends that both counts one and two referred only to the incident with the Lego toy that had resulted in the victim's trip to the hospital on January 3, 2008. He argues that the state failed to prove that incident was rape and changed its theory of the case. The record does not support that contention. The state did not abandon its theory that the incident that had caused the vaginal bleeding was a rape. Although both children had stated that V.L. had fallen on a Lego toy, Z.L. also stated that Lukacs had lied at the hospital. The treating

---

45. *Sellards* at 170, 17 OBR 410, 478 N.E.2d 781; *Buttrom; State v. Gingell* (1982), 7 Ohio App.3d 364, 366, 7 OBR 464, 455 N.E.2d 1066.

46. *Sellards* at 170–171, 17 OBR 410, 478 N.E.2d 781; *Buttrom; Gingell* at 366, 7 OBR 464, 455 N.E.2d 1066.

47. *Sellards* at 171, 17 OBR 410, 478 N.E.2d 781; *Gingell* at 366, 7 OBR 464, 455 N.E.2d 1066.

48. *State v. Morgan,* 12th Dist. Nos. CA2009–07–029 and CA2009–08–033, 2010-Ohio-1720, 2010 WL 1534151, ¶ 12, quoting *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626, 632.

49. *Sellards* at 171, 17 OBR 410, 478 N.E.2d 781; *Buttrom; Gingell* at 367, 7 OBR 464, 455 N.E.2d 1066.

50. *Sellards* at syllabus; *State v. Parker* (Mar. 27, 1996), 1st Dist. No. C–950534, 1996 WL 134539.

physician testified that V.L.'s injuries could have been caused by such a toy but only if it were inserted in the vaginal opening in a particular way.

{¶ 46} Further, the victim described numerous incidents of penetration that had caused her pain and bleeding around the time "the doctor truck" took her to the hospital where they "fixed" her. Further, Ambre described another incident of vaginal bleeding besides the one that resulted in the victim's trip to the hospital.

{¶ 47} This is not a case, as Lukacs claims, in which the state introduced an alternate theory of the case in violation of his due-process rights. To violate due process, the inconsistency "must exist at the core" of the prosecutor's case.[51] The state did not abandon its theory of the case and introduce a distinct, unexpected, and inconsistent theory of the case.[52] Instead, this case presents the common situation in child-abuse cases in which the crimes involved a repeated course of conduct over an extended period of time.[53]

{¶ 48} Counts three, four, and five of the indictment stated that the offenses had occurred on an undetermined date between December 1, 2007, and March 25, 2008. The bill of particulars contained the same dates. In response to Lukacs's pretrial motion to dismiss or merge duplicate counts, the state filed an amended bill of particulars.

{¶ 49} The amended bill of particulars changed the language of counts three, four, and five to state that "[b]etween the dates of December 1st, 2007 and March 25th, 2008, excluding January 3rd, 2008, * * * the defendant did, on multiple occasions and on multiple different undetermined dates, repeatedly insert various objects into the vaginal and anal cavity of V.L., including but not limited to his fingers, penis and tongue, and other inanimate objects, causing serious physical harm to V.L. and he did so for sexual gratification purposes." After the state filed the amended bill of particulars, Lukacs did not pursue his motion to dismiss. On the day of trial, the court permitted the state to amend the indictment to extend the time period from October 1, 2007, to March 25, 2008.

{¶ 50} The evidence showed that Lukacs committed numerous offenses against the victim. The separate counts of the indictment involved separate acts, not

---

51. *United States v. Presbitero* (C.A.7, 2009), 569 F.3d 691, 702.

52. See *State v. Thomas*, 8th Dist. No. 84728, 2005-Ohio-1840, 2005 WL 914710, ¶ 37; *State v. Stayton* (1998), 126 Ohio App.3d 158, 169, 709 N.E.2d 1224; *Presbitero* at 702; *Thompson v. Calderon* (C.A.9, 1997), 120 F.3d 1045, 1055–1059, reversed (1998), 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728.

53. See *Morgan*, 2010-Ohio-1720, 2010 WL 1534151, at ¶ 19; *Crawford*, 2008-Ohio-6260, 2008 WL 5077638, at ¶ 42; *State v. Mundy* (1994), 99 Ohio App.3d 275, 296, 650 N.E.2d 502; *Valentine*, 395 F.3d at 640–641.

multiple counts involving the same act. Again, the state could not have been more specific regarding the dates, given the young age of the victim and her revelation about numerous acts of abuse over an extended period of time. The lack of specificity did not rise to the level of a due-process violation, particularly given that Lukacs did not raise a date-specific defense, such as an alibi defense. He home-schooled the children and never denied being home alone with the children during the time period described in the indictment. His defense was that the abuse never occurred and that the children had been coached to fabricate the allegations against him. Consequently, Lukacs was not prejudiced by the state's failure to allege more specific dates,[54] and we overrule his fifth, seventh, and eighth assignments of error.

{¶ 51} In his sixth assignment of error, Lukacs contends that the trial court erred in allowing the state to amend counts three, four, and five of the indictment to expand the time frame in which the offenses allegedly occurred. He contends that the amendment violated his due-process rights.

{¶ 52} Crim.R. 7(D) provides that the court may amend the indictment "in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." The date of the offense is not an essential element of the offense.[55] Amending the indictment to change the dates does not change the name or identity of the crime charged.[56]

{¶ 53} Lukacs did not object to the amendment. As we have previously stated, the lack of specificity as to dates did not prejudice the defense. Consequently, we cannot hold that the trial court's decision to allow the amendment rose to the level of plain error. We overrule Lukacs's sixth assignment of error.

### VI. Prosecutorial Misconduct

{¶ 54} In his ninth assignment of error, Lukacs contends that the prosecutor made improper comments during closing argument. He argues that the prosecutor improperly stated that she believed that Lukacs had forced the victim and her brother to have sex with each other. This assignment of error is not well taken.

---

**54.** See *Morgan,* 2010-Ohio-1720, 2010 WL 1534151, at ¶ 14; *Crawford,* 2008-Ohio-6260, 2008 WL 5077638, at ¶ 43.

**55.** *Sellards,* 17 Ohio St.3d at 171, 17 OBR 410, 478 N.E.2d 781; *Gingell,* 7 Ohio App.3d at 366, 7 OBR 464, 455 N.E.2d 1066.

**56.** *State v. Fulton,* 12th Dist. No. CA2002–10–085, 2003-Ohio-5432, 2003 WL 22326575, ¶ 23; *State v. Ahedo* (1984), 14 Ohio App.3d 254, 255–256, 14 OBR 283, 470 N.E.2d 904.

{¶ 55} Prosecutors are normally entitled to wide latitude in their remarks.[57] The test for prosecutorial misconduct is (1) whether the remarks were improper and, if so, (2) whether the remarks affected the accused's substantial rights.[58] The conduct of the prosecuting attorney during trial cannot be grounds for error unless it deprives the defendant of a fair trial.[59]

{¶ 56} Lukacs failed to object to the comment that he now claims as improper. Thus, he cannot raise the issue on appeal unless it rose to the level of plain error.[60] Our review of the prosecutor's entire argument shows that even if the remark was improper, it was not so egregious as to affect his substantial rights or to deny him a fair trial, much less rise to the level of plain error.[61] Consequently, we overrule his ninth assignment of error.

## VII. Weight and Sufficiency

{¶ 57} In his eleventh assignment of error, Lukacs contends that the state failed to present sufficient evidence to support his convictions for rape and felonious assault. Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all the elements of rape, under R.C. 2907.02(A)(1)(b) and 2907.02(A)(2), and felonious assault, under R.C. 2903.11(A)(1), with a specification that the offense was committed with a sexual motivation. Therefore, the evidence was sufficient to support those convictions.[62]

{¶ 58} Both the victim and her brother described numerous incidents of rape, some of which caused the victim to bleed and cry in pain. Despite Lukacs's claims to the contrary, both of their statements were corroborated by physical evidence. But even if they had not been, no rule of law exists that a witness's testimony must be corroborated by physical evidence.[63]

---

**57.** *State v. Mason* (1998), 82 Ohio St.3d 144, 162, 694 N.E.2d 932; *State v. McCrary*, 1st Dist. No. C–080860, 2009-Ohio-4390, 2009 WL 2674327, ¶ 19.

**58.** *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; *McCrary* at ¶ 19.

**59.** *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203; *McCrary* at ¶ 19.

**60.** *Underwood*, 3 Ohio St.3d at 13, 3 OBR 360, 444 N.E.2d 1332; *Burrell*, 2005-Ohio-34, 2005 WL 27469 at ¶ 24.

**61.** See *Burrell* at ¶ 26; *Hirsch*, 129 Ohio App.3d at 309–310, 717 N.E.2d 789.

**62.** See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Russ*, 1st Dist. No. C–050797, 2006-Ohio-6824, 2006 WL 3759556, ¶ 13.

**63.** *Jones*, 2009-Ohio-4190, 2009 WL 2579666, at ¶ 43.

{¶ 59} Lukacs also argues that the testimony of the state's witnesses was not credible, but matters as to the credibility of evidence are for the trier of fact to decide.[64] The evidence in this case was overwhelming. The children's stories were detailed and consistent over time, particularly given their young ages.

{¶ 60} In his twelfth assignment of error, Lukacs argues that his convictions for rape and felonious assault were against the manifest weight of the evidence. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse his convictions and order a new trial. Therefore the convictions are not against the manifest weight of the evidence.[65]

## VIII. Adam Walsh Act

{¶ 61} In his eleventh assignment of error, Lukacs also contends that the state failed to present sufficient evidence to support his conviction for failing to periodically verify his address under R.C. 2950.06(B)(2). The record shows that Lukacs was convicted of gross sexual imposition in July 2000 and that he was classified as a sexually oriented offender under the prior law. In 2007, the General Assembly enacted Am.Sub.S.B. No. 10 ("Senate Bill 10"), which amended various sections of R.C. Chapter 2950, to implement the federal Adam Walsh Child Protection and Safety Act of 2006.[66] Under the provisions of Senate Bill 10, Lukacs was reclassified as a Tier II offender, meaning that he had to register for 25 years and to verify his address every 180 days.[67] He never challenged that reclassification.

{¶ 62} The evidence showed that Lukacs was sent a notice to report to the Hamilton County Sheriff's Office on February 24, 2008, to verify his address. When he did not report, the sheriff's office sent him a warning letter telling him to report by March 3, 2008. He signed the certified-mail receipt that accompanied the letter. He also called on February 29 and stated that he would come to the office. When he did not appear on March 3, a warrant for his arrest was issued. He ultimately appeared on March 7.

{¶ 63} Deputy Aaron Breeze testified that he had calculated the date by using 180–day periods from the date Lukacs had originally registered as a sexually

64. *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *Jones* at ¶ 43.

65. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *Jones* at ¶ 44.

66. *Sewell v. State,* 181 Ohio App.3d 280, 2009-Ohio-872, 908 N.E.2d 995, ¶ 1.

67. See R.C. 2950.07(B)(2); R.C. 2950.06(B)(2); *Sewell* at ¶ 2.

oriented offender. Lukacs contends that it should have been calculated as 180 days from the date he last verified his address, which was October 31, 2007.

{¶ 64} Lukacs was required to register under R.C. 2950.04(A)(2). Consequently, R.C. 2950.06 required him to verify his address every 180 days after his "initial registration date during the period [he] was required to register." Consequently, the state's interpretation of how to calculate the date was correct.

{¶ 65} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of failing to periodically verify an address under R.C. 2950.06. Therefore, the evidence was sufficient to support that conviction.[68] Further, we cannot hold that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. Consequently, it is not against the manifest weight of the evidence.[69] We overrule Lukacs's eleventh and twelfth assignments of error.

{¶ 66} In his tenth assignment of error, Lukacs contends that his classification as a Tier III sex offender under Senate Bill 10 in this case was unconstitutional. Lukacs had been a Tier II offender but was classified a Tier III offender after his rape convictions. Lukacs contends that the Adam Walsh Act violates the separation-of-powers doctrine, the prohibition against double jeopardy, and the prohibition against cruel and unusual punishment. This court has rejected those and numerous other arguments and has found Senate Bill 10 to be constitutional.[70]

{¶ 67} Lukacs is technically in a different procedural posture from the defendants in those cases because he never challenged his original retroactive reclassification from a sexually oriented offender to a Tier II sex offender. He is now challenging his prospective classification as a Tier III offender following the rape convictions involved in this appeal.[71] Nevertheless, the logic of those cases still applies. Senate Bill 10 is constitutional, and we overrule Lukacs's tenth assignment of error.

---

**68.** See *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus; *Russ,* 2006-Ohio-6824, 2006 WL 3759556, at ¶ 13.

**69.** See *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541; *Jones,* 2009-Ohio-4190, at ¶ 44.

**70.** *Nixon v. State,* 1st Dist. No. C–090219, 2010-Ohio-767, 2010 WL 746693; *Beck v. State,* 1st Dist. No. C–090213, 2010-Ohio-669, 2010 WL 682514; *White v. State,* 1st Dist. No. C–090177, 2010-Ohio-234, 2010 WL 334864; *Sewell,* 181 Ohio App.3d 280, 2009-Ohio-872, 908 N.E.2d 995.

**71.** See *State v. Acuff,* 8th Dist. No. 92342, 2009-Ohio-6633, 2009 WL 4856805, ¶ 15–25.

### IX. Cumulative Error

{¶ 68} In his thirteenth assignment of error, Lukacs contends that the cumulative effect of the trial court's errors denied him a fair trial. The cumulative effect may deprive a defendant of a fair trial even though individual instances of error do not warrant a reversal.[72] The defendant must demonstrate that a reasonable probability exists that the outcome of the trial would have been different absent the alleged errors.[73] Lukacs has not demonstrated that a different outcome would have occurred. Any errors were harmless because the evidence that he committed the offenses was overwhelming. Consequently, we overrule his thirteenth assignment of error.

### X. Summary/Failure to Assess Costs

{¶ 69} In sum, we overrule all 13 of Lukacs's assignments of error. But we note that the trial court failed to address the mandatory issue of court costs at the sentencing hearing or in its judgment entry.[74] We therefore reverse the trial court's judgment only in the respect that it failed to address costs. We remand the case to the trial court to address that issue and to make the appropriate order in its judgment entry. We affirm the trial court's decision in all other respects.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

HILDEBRANDT, P.J., and MALLORY, J., concur.

---

72. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256, paragraph two of the syllabus; *State v. Dieterle*, 1st Dist. No. C–070796, 2009-Ohio-1888, 2009 WL 1099481, ¶ 38.

73. *Dieterle* at ¶ 38.

74. See R.C. 2947.23(A); *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278; *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393.