[Cite as *State v. Ullrich*, 2022-Ohio-2392.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2021 CA 00065 |
| BRUNO R. ULLRICH | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Case No. 20-CR-00522 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 11, 2022 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| CLIFFORD J. MURPHY<br>Assistant Prosecuting Attorney<br>20 North Second Street – 4th Floor<br>Newark, Ohio 43055 | APRIL F. CAMPBELL<br>Campbell Law, LLC<br>46 ½ North Sandusky Street<br>Delaware, Ohio 43015 |

*Hoffman, P.J.*

{¶1}   Defendant-appellant Bruno Ullrich appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, following a bench trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On October 8, 2020, the Licking County Grand Jury indicted Appellant on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree ("Count 1"); and one count of assault, in violation of R.C. 2903.13(A), a felony of the second degree ("Count 2"). Appellant appeared before the trial court for arraignment on October 27, 2020, and entered a plea of not guilty to the Indictment.

{¶3}   On January 22, 2021, Appellant filed a Motion to Suppress and Request for Dismissal on Fourth Amendment grounds.  The trial court conducted an evidentiary hearing on March 26, 2021.  The trial court denied Appellant's motion to suppress and motion to dismiss via Decision and Order filed June 14, 2021.  The matter was scheduled for jury trial, but Appellant subsequently waived his right to trial by jury.  The trial court conducted a bench trial on August 3, 2021.

{¶4}   The following evidence was adduced at trial:

{¶5}   Brittany Burwell testified she lives at 198 South William Street, Johnstown, Licking County, Ohio, and has resided there for four years.  Burwell stated, on the evening of September 25, 2020, she walked outside to get a paintbrush and heard "horrific screaming – um – like somebody was being hurt.  It was not good screaming at all." Transcript of Aug. 3, 2021 Bench Trial at 17.  She called her husband outside, and he agreed they should call the police.  Burwell's 9-1-1 call was played for the trial court.

While she was still on the phone with dispatch, officers arrived at the scene. As Burwell spoke with a police officer, the screaming began again. Burwell recalled "her [neighbor] actually coming out of the house screaming – um – that there was a fire and that she needed firefighters – um – but there was no fire." *Id.* at 18.

{¶6} Officer Randall Fox with the Johnstown Police Department testified he was working on September 25, 2020, and was dispatched to 198 South Williams Street in regards to a disturbance. Officer Fox initially spoke with Burwell then proceeded to investigate screaming coming from 184 South Williams Street, the house next door. Officer Fox observed a bare-chested man, who was subsequently identified as Appellant, standing in the doorway and looking confused. The officer looked over the privacy fence because he still could hear a woman screaming. He observed a woman, who was later identified as Robyn Duckworth, laying on the ground. She was "actively bleeding and covered in blood, had her shirt stained from her – uh – neck and shoulder area." *Id.* at 21-22.

{¶7} When Officer Fox encountered Duckworth, she was covered in blood and screaming for help. Duckworth stated she was dizzy. Officer Fox described her as visibly upset and crying. She had blood streaming down her face. Duckworth told Officer Fox she was assaulted by Appellant. She indicated she had been struck multiple times including being struck in the head with a blunt or glass object. Duckworth explained as she tried to flee the home, Appellant prevented her from doing so. Officer Fox recalled Duckworth told him Appellant put "his hand over her mouth or around her throat to prevent her from screaming out for help." *Id.* at 24.

{¶8} Officer Fox testified he spoke with Appellant that evening. The officer noted Appellant appeared to be intoxicated and smelled of alcoholic beverage. He asked Appellant "multiple times what was going on." *Id*. Officer Fox recalled, "He just stood there confused as to like – he didn't understand why I was asking him what was going on when there was something clearly going on at that very moment." *Id*. at 24-25. When medics arrived, Officer Fox asked Appellant to step outside of the privacy fence and speak with Sergeant Hatfield. Medics transported Duckworth to St. Ann's Hospital. Deputy Chief Smart was also at the scene.

{¶9} Appellant refused officers' request to enter the home to search for the object with which Duckworth had been struck. He became agitated when officers asked his permission to do so. Appellant attempted to go back inside the house, but was instructed by officers to stay outside because they needed to speak with him. Appellant was eventually transported to the Licking County Justice Center. Officer Fox proceeded to the hospital to speak with Duckworth.

{¶10} Officers obtained a search warrant for the residence. Inside a bag tucked behind the front door, officers found an alcoholic beverage bottle with blood on it. A purse with blood marks on the side was found near the front door. Officer Fox described the residence as "very messy" and "it appeared that a [sic] altercation took place." *Id* at 31.

{¶11} Deputy Chief Rusty Smart testified he was working on September 25, 2020, when he was called by Officer Hatfield, Sergeant Hatfield by the time of trial, in reference to a female screaming for help. Deputy Chief Smart responded to 184 South Williams Street. When he arrived at the scene, he observed Officer Hatfield speaking with

Appellant. Deputy Chief Smart looked over the gate and observed Officer Fox and medics tending to a female with blood all over her head and hair.

{¶12} Deputy Chief Smart was speaking with Brittany Burwell, who had placed the 9-1-1 call, when he heard Appellant yelling at Officer Hatfield. Appellant was attempting to enter his residence. Deputy Chief Smart asked Appellant to return to the driveway to speak with the officers. Appellant refused. As Deputy Chief Smart opened the gate leading toward the residence, Appellant came off the porch and held the gate shut. A struggle ensued, resulting in Appellant striking Deputy Chief Smart in the face. The officers took Appellant to the ground and handcuffed him. Appellant was placed in the cruiser and transported to the Licking County Justice Center.

{¶13} Matthew Martin, a firefighter medic with the Monroe Township Fire Department, testified he was working on September 25, 2020, when he was dispatched to 184 South Williams Street in response to a traumatic injury. When he arrived, Martin observed a female sitting on a side porch between the driveway and the house. Martin indicated "she had a moderate amount of blood – uh – kind of matted in her hair." *Id.* at 64. Martin described the woman as alert and awake. The woman denied any illegal drug use, but admitted to consuming alcohol. The woman informed Martin she and Appellant had been in a fight during which Appellant picked up an object and struck her in the head.

{¶14} Martin and another medic attempted to clean up the blood to establish the extent of Duckworth's injuries. Martin observed a zigzag puncture laceration approximately three-quarters of an inch long to the front of Duckworth's forehead, and swelling approximately an inch in diameter, further back, on the side of Duckworth's head. Medics moved Duckworth to a cot and placed her in the ambulance. Martin described

Duckworth as "pretty hysterical – um – pretty anxious, very talkative throughout the entire contact. Um – again, she had been drinking alcohol. Uh – her speech was a little slurred, pupils were a little sluggish to respond, and because of that and not being able to rule out head injury, recommended transport to St. Ann's." *Id.* at 65. Martin authenticated the report he prepared following the call.

{¶15} Robinette Bowman, a floor nurse in the emergency department of St. Ann's Hospital, was working on September 25, 2020, when Duckworth was brought in for treatment. Bowman authenticated Duckworth's medical records. Duckworth informed Bowman she and Appellant had been drinking and he started hitting her over the head with an unknown object and kicked her multiple times. Duckworth admitted she was fearful of Appellant and acknowledged a history of abuse including recent physical violence and abuse. Bowman observed Duckworth's injuries and described those injuries as depicted in photographs entered into evidence. Doctors used staples to close the four-centimeter laceration on Duckworth's head.

{¶16} After the state rested its case, Appellant made an oral Crim. R. 29 motion for acquittal, which the trial court overruled.

{¶17} Appellant testified on his own behalf. Appellant stated Duckworth, who was living in Toledo, called and asked if she could stay with him because she was having a problem with her brother and mother. Duckworth arrived at Appellant's residence between 5 and 6 p.m. on September 25, 2020, and, according to Appellant, immediately began drinking. Appellant explained he did not drink because he was preparing food for the dogs and wanted to catch a flight the next day. At approximately 10 p.m., Appellant told Duckworth he was going to bed, but agreed to have a shot with Duckworth

beforehand due to her insistence.  Appellant indicated Duckworth was intoxicated, but he had no idea how much she had consumed.

**{¶18}**  After Appellant went to bed, he heard a noise coming from the kitchen.  He got out of bed and walked to the kitchen.  Appellant observed Duckworth sitting on a stool at the counter.   Duckworth was holding a bottle and Appellant tried to coax her into giving it to him.   As Appellant reached for the bottle, Duckworth grabbed his private parts, causing him to fall over the garbage can and land in front of the refrigerator.  Duckworth fell in the opposite direction against a cabinet.  Appellant called to Duckworth, but she did not respond.  Appellant recalled Duckworth crawling towards, then out, the door, "all the time she was – she was insanely loud – um – yelling * * * like hysteric." *Id.* at 89.  Appellant observed blood near the cabinet.  Appellant denied striking or kicking Duckworth.

**{¶19}**  Appellant described his interaction with the officers.  He explained when the officers began to question him, he immediately thought, "They pinned this on you, so you have to go back in," and walked back into the fenced-in area, towards the house.  *Id.* at 91.  Appellant added Officer Fox opened the gate, and Appellant asked him to keep it closed because of the dogs.  Thereafter, Deputy Chief Smart became "very aggressive really and – and he pulled me over the fence * * * he grabbed my hand – or my arm so – um – what was – what I said stay out and he grabbed me. * * * he pulled me out and I think he was – uh – shouting I don't need a warrant buddy and they put me on the ground and arrested me." *Id.* at 95.

**{¶20}**  The defense rested upon conclusion of Appellant's cross-examination.

**{¶21}**  The state called Sergeant Paul Hatfield in rebuttal.   Sergeant Hatfield testified, on September 25, 2020, he was dispatched to the area of 184 South Williams

Street to assist Officer Fox.  Sergeant Hatfield confirmed he was wearing his body camera that day.  A portion of the video from Sergeant Hatfield's body camera was played.

**{¶22}**  After hearing the evidence, the trial court found Appellant guilty of the lesser included offense on Count 1, to wit: assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, and not guilty on Count 2, felony 2 assault.  The trial court sentenced Appellant to 180 days in the Licking County Justice Center, suspended 180 days of the sentence, and placed him on probation for a period of one year.  The trial court memorialized Appellant's conviction and sentence via Judgment of Conviction filed August 3, 2021.

**{¶23}** It is from his conviction and sentence Appellant appeals, raising the following assignments of error:

I. ULLRICH'S ASSAULT CONVICTION SHOULD BE REVERSED BECAUSE THE TRIAL COURT SHOULD NOT HAVE ADMITTED THE DECLARANT-VICTIM STATEMENTS UNDER ANY EXCEPTION TO THE HEARSAY RULES.

II. ULLRICH'S ASSAULT CONVICTION SHOULD BE REVERSED BECAUSE THE STATEMENTS MADE BY THE VICTIM WERE INTRODUCED IN VIOLATION OF THE CONFRONTATION CLAUSE.

III. THE STATE'S EVIDENCE THAT ULLRICH COMMITTED ASSAULT WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.

IV. THE TRIAL COURT'S DECISION TO FIND ULLRICH GUILTY OF ASSAULT SHOULD BE REVERSED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING ULLRICH OF IT.

I

**{¶24}** In his first assignment of error, Appellant argues the trial court erred in admitting the statements made by the declarant-victim Robyn Duckworth under the excited utterance exception to the hearsay rule.

**{¶25}** "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶26}** Evid.R. 803 provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: * * *

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**{¶27}** A trial court may admit a hearsay statement under the excited utterance exception under the following circumstances:

(a) there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' "

*State v. Jones,* 135 Ohio St.3d 10, 2012–Ohio–5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker,* 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus. Accord *State v. Taylor,* 66 Ohio St.3d 295 (1993).

**{¶28}** Appellant asserts the trial court erred in admitting Duckworth's statements under the excited utterance exception to the hearsay rule because the state failed to establish a lack of time between the startling event and Duckworth's statements, and failed to establish the circumstances surrounding Duckworth's statements eliminated the possibility of fabrication.　Appellant focuses on the first words Officer Fox heard Duckworth utter, "Please call 9-1-1, there's a fire." Tr. at 27.　Appellant submits, because "Officer Fox quickly deduced upon approach however that, in fact, there was no fire, * * * within one minute of the officer's interaction with the declarant, it was clear that the circumstances objectively indicated that the declarant had time to fabricate."　Brief of Appellant at 5.　We disagree.

**{¶29}** Excited utterances are deemed "reliable because they do not entail an opportunity for the declarant to reflect, thus reducing the chance to fabricate or distort the truth." *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 20. The amount of time which elapses "between the statement and the event is relevant but not dispositive of" whether a declarant's statement occurred while still under the stress of the startling occurrence. *Jones*, supra at ¶ 168, quoting *Taylor,* supra at 303; *State v. Wallace,* 37 Ohio St.3d 87, 90, 524 N .E.2d 466 (1988).　"There is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance." *Taylor,* supra at 303. Instead, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Id.*

**{¶30}** Brittany Burwell testified, on the evening of September 25, 2020, she walked outside to get a paintbrush and heard "horrific screaming – um – like somebody

was being hurt.  It was not good screaming at all."  Tr at 17.  She called to her husband to come outside, and he agreed they should call the police.  While she was still on the phone with dispatch, officers arrived at the scene.  As Burwell spoke with a police officer, the screaming began again.

{¶31}  Officer Fox was dispatched to 198 South Williams Street, Johnstown, Ohio, in response to a 9-1-1 disturbance call.  While Officer Fox was speaking with Burwell, he heard screaming coming from 184 South Williams Street, the house next door.  The officer proceeded to the residence and observed Appellant, standing in the doorway, looking confused.  The woman's screaming continued.  Officer Fox looked over the privacy fence and saw Robyn Duckworth, laying on the ground.  Duckworth was "actively bleeding and covered in blood, had her shirt stained from her – uh – neck and shoulder area."  Tr. at 21-22.   Officer Fox described Duckworth as "covered in blood, she's screaming out for help * * * she claimed that she was dizzy * * * she was visibly upset and crying and blood coming down her face."  *Id.* at 23.

{¶32}  Matthew Martin, the medic who responded to the call, described Duckworth as "pretty hysterical – um – pretty anxious, very talkative throughout the entire contact." *Id.* at 64.

{¶33}  We find the testimony establishes Duckworth was in a frantic, excited state from the time Burwell initially heard Duckworth's screams and placed the 9-1-1 call until well after officers and medics arrived.  In addition, we have reviewed the body camera video footage of the officers responding to the scene and find the footage depicts a clearly distraught and hysterical Duckworth. There is nothing in the record to demonstrate Duckworth had time to fabricate the assault.  The fact there was no fire despite Duckworth

yelling such does not prove she had time to fabricate the events she subsequently described to Officer Fox.

**{¶34}** Based upon the foregoing, we find the trial court did not abuse its discretion in admitting Duckworth's statements under the excited utterance exception to the hearsay rule.

**{¶35}** Appellant's first assignment of error is overruled.

II

**{¶36}** In his second assignment of error, Appellant argues the admission of the Duckworth's statements violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**{¶37}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court concluded the Sixth Amendment prohibits the introduction of testimonial statements by a non-testifying witness, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 54. Applying that definition to the facts in *Crawford*, the High Court held statements by a witness during police questioning at the station house were testimonial and thus could not be admitted. *Id.*

**{¶38}** In *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which were decided together, the United States Supreme Court concluded statements are not testimonial if the primary purpose of the interrogation by law enforcement was to enable police to respond to an ongoing emergency. Statements are testimonial when the circumstances objectively indicate there is no such

ongoing emergency, and the primary purpose of the interrogation is to establish past events which are potentially relevant to later criminal prosecution. *Id.* at 822.

{¶39} The existence of an "ongoing emergency" at the time of the encounter is among the most important circumstances informing the interrogation's "primary purpose." *Michigan v. Bryant*, 562 U.S. 344, 361, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). Whether an emergency exists and is ongoing is a highly context-dependent inquiry. *Id.* at 363. An assessment of whether an emergency threatening the police and public is ongoing cannot narrowly focus on whether the threat to the first victim has been neutralized because the threat to the first responders and public may continue. *Id.*

{¶40} A victim's medical condition is also important to the primary purpose inquiry to the extent it sheds light on the victim's ability to have any purpose at all in responding to police questions and on the likelihood any such purpose would be testimonial. *Id.* at 364–365. The victim's condition also provides an important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public. *Id.* at 365.

{¶41} Finally, another factor to consider pursuant to the "primary purpose" test is the encounter's informality. *Id.* at 366. Formality suggests the absence of an emergency, but informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent. *Id.* However, the court distinguished the facts in *Bryant*, where the questioning occurred in an exposed public area, before emergency medical services arrived, and in a disorganized fashion, from the formal station-house interrogation in *Crawford*. *Id.* In addition to the circumstances in which an encounter occurs, the

statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation. *Id.* at 367.

{¶42} Police officers in our society function as both first responders and criminal investigators and their dual responsibilities may mean they act with different motives simultaneously or in quick succession. *Id.* at 368. Similarly, victims are also likely to have mixed motives when making statements to the police. *Id.* During an ongoing emergency, a victim is most likely to want the threat to her and to other potential victims to end, which does not necessarily mean the victim wants or envisions prosecution of the assailant. *Id.* A victim may want the attacker to be incapacitated temporarily or rehabilitated. *Id.* Alternatively, a severely injured victim may have no purpose at all in answering questions posed, and may provide answers which are simply reflexive. *Id.* at 368-69. The victim's injuries might be so debilitating as to prevent her from thinking sufficiently clearly to understand the purpose of her statements to police. *Id.*

{¶43} In the case sub judice, the state introduced footage from Officer Fox's bodycam. In that footage and audio, Duckworth can be heard crying for help. Officer Fox approaches a fence and calls, "Hey, what's going on guys?" Duckworth responds, "There's a problem. We need police. Don't listen to him." Officer Fox asks Duckworth what happened as he opens the gate, Duckworth advises the officer they have been drinking and she needs medical assistance. Duckworth is sprawled head first down the porch steps. Her shirt is covered in blood. Appellant is standing nearby. As Officer Fox radios for medics, Duckworth hysterically recounts the issues the couple has been experiencing. Officer Fox asks, "What exactly happened tonight?" Duckworth answers, "I'm not safe." Officer Fox continues to question her. Duckworth tells the officer Appellant

started hitting her with glass objects and other objects, and she "started screaming like a siren." Officer Fox turns to Appellant and asks his name. Appellant denies hitting Duckworth and did not know how she was injured. Officers call Appellant to step out beyond the privacy fence and speak with them. Duckworth tells Officer Fox Appellant has been hitting her with various objects and she cannot get off the ground.

**{¶44}** Medics arrive and begin to treat Duckworth. Duckworth cries hysterically throughout the encounter. She complains of being "very nauseous." She repeatedly states Appellant kept hitting her "with various objects." Officer Fox does not question Duckworth once medics arrive.

**{¶45}** We find Duckworth's statements to Officer Fox were non-testimonial under the primary purpose test. When Officer Fox arrived at the residence, his primary purpose was to determine how to address an ongoing emergency from his standpoint as a first responder. See, *Bryant*, supra, at 1160. Officer Fox sought information from Duckworth in order to obtain appropriate medical assistance for her injuries, to determine whether the threat of immediate danger had subsided, and to identify who assaulted her. See, *State v. Little*, 3rd Dist. No. 1-16-29, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 21. Further, this interview was informal, taking place on the porch of Appellant's residence where Officer Fox first encountered Duckworth. *Id.*; see also, *State v. Knecht*, 12th Dist. Warren No. CA2015–04–037, 2015-Ohio-4316, ¶ 25.

**{¶46}** Based upon the foregoing, we find the trial court did not err in finding Duckworth's statements to Officer Fox were non-testimonial and the admission of such did not violate the Confrontation Clause.

**{¶47}** Appellant's second assignment of error is overruled.

III, IV

**{¶48}** In his third assignment of error, Appellant contends his conviction was based upon insufficient evidence.   In his fourth assignment of error, Appellant challenges his conviction as against the manifest weight of the evidence.

**{¶49}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶50}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶51}** Appellant was convicted of assault, in violation of R.C. 2903.13(A), which provides:

No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

**{¶52}** R.C. 2901.01(A)(3) defines "physical harm" as follows:

"Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration.

**{¶53}** With respect to his assertion the state's evidence was legally insufficient, Appellant argues, "no statement by the declarant-witness Robyn Duckworth should have been admitted at [his] trial * * * Without the declarant's statements, the State had no evidence that [Appellant] committed assault against Duckworth, even in a light most favorable to it." Brief of Appellant at 8. Appellant further submits his conviction was against the manifest weight of the evidence because "without the statements by declarant-victim, erroneously introduced under the excited utterance exception, and in violation of Ullrich's right to confront her, there is no evidence by which Ullrich could be convicted of assault." *Id.* at 9. Appellant continues, "the inference that Duckworth fabricated the facts and Ullrich spoke truthfully, was more believable and persuasive." *Id.*

**{¶54}** Having found Duckworth's statements were properly admitted, supra, we find, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the essential elements of assault proven beyond a reasonable doubt. We further find Appellant's conviction was not against the manifest weight of the evidence.

**{¶55}** As set forth in our Statement of the Case and Facts, supra, Officer Fox arrived at 198 South Williams Street on September 25, 2020, in response to a disturbance. While Officer Fox was speaking with Burwell, he heard screaming coming from the house next door. The officer walked to the residence and observed Appellant, standing in the doorway and looking confused. Officer Fox then looked over the privacy fence, as he still could hear a woman screaming, and observed Duckworth, laying on the

ground, "actively bleeding and covered in blood, had her shirt stained from her – uh – neck and shoulder area." Tr. at 21-22.

{¶56} Duckworth was screaming for help, complaining she was dizzy. Officer Fox described her as visibly upset and crying. She had blood streaming down her face. Duckworth told Officer Fox she was assaulted by Appellant. She indicated she had been struck multiple times including being struck in the head with a blunt or glass object. Duckworth explained as she tried to flee the home, Appellant prevented her from doing so. Officer Fox recalled Duckworth told him Appellant put "his hand over her mouth or around her throat to prevent her from screaming out for help." *Id.* at 24.

{¶57} Medic Matthew Martin was dispatched to 184 South Williams Street on September 25, 2020, in response to a traumatic injury. When he arrived, Martin observed Duckworth sitting on a side porch between the driveway and the house. Duckworth "had a moderate amount of blood – uh – kind of matted in her hair." *Id.* at 64. Duckworth informed Martin she and Appellant had been in a fight during which he struck her in the head with something.

{¶58} After Martin and another medic cleaned up the blood to establish the extent of Duckworth's injuries, they observed a zigzag puncture laceration approximately three-quarters of an inch long to the front of Duckworth's forehead, and swelling approximately an inch in diameter, further back, on the side of Duckworth's head. Medics moved Duckworth to a cot and placed her in the ambulance. Duckworth was "pretty hysterical – um – pretty anxious, very talkative throughout the entire contact. * * * her speech was a little slurred, pupils were a little sluggish to respond, and because of that and not being able to rule out head injury," she was transported to St. Ann's Hospital. *Id.* at 65.

{¶59} Nurse Robinette Bowman was working in the emergency department of St. Ann's Hospital when Duckworth was brought in for treatment. Duckworth informed Bowman she and Appellant had been drinking and he started hitting her over the head with an unknown object and kicked her multiple times. Bowman observed Duckworth's injuries and described those injuries as depicted in photographs entered into evidence. Doctors used staples to close the four-centimeter laceration on Duckworth's head.

{¶60} Based upon the foregoing and the entire record in this matter, we find Appellant's conviction was not based upon insufficient evidence and was not against the manifest weight of the evidence.

{¶61} Accordingly, Appellant's third and fourth assignments of error are overruled.

{¶62} The judgment of the Licking County Court of Common Pleas is affirmed.


By: Hoffman, P.J.

Wise, John, J. and

Delaney, J. concur